CONNECTICUT GENERAL LIFE INSURANCE CO. *v.* MYRON F. CHASE
ET AL. AND TRUSTEES.

October Term, 1899.

Present : TAFT, C. J., ROWELL, TYLER, MUNSON, THOMPSON and WATSON, JJ.

Opinion filed March 3, 1900.

*Bond of employee—Duty of obligee to sureties—Fraud in concealing past dishonesty of employee—Non-liability of sureties without notice*—It is the duty of
an employer in taking a bond for the honesty and fidelity of an employee to disclose to the sureties thereon the employer's knowledge of
past misappropriations of money amounting to criminality on the part
of such employee, in the course of his business as such employee, and
if such disclosure is not made the sureties are not liable unless they in
fact had knowledge or information concerning such misappropriations
when they signed and delivered such bond.

*Practice—Case remanded for further findings*—This case, which was a suit by
an insurance company on an agent's bond, was heard by a referee, and
the above rule being applicable, and the report not showing whether in
fact the defendant sureties did or did not have such knowledge or information, no final disposition was made of the case, but the cause was
remanded that the facts as to such knowledge and information, or the
want thereof, might be made a part of the record.

ACTION to recover for the breach of a writing obligatory,
executed by the defendant, Myron F. Chase, as principal, and by
the other defendants, Arthur E. Ellis, P. J. Chase, Isabelle Chase
and Morton Marvin, as sureties, and delivered to the plaintiff.

Heard upon the report of a referee, Washington County,
September Term, 1899, *Watson*, J., presiding. Judgment *pro
forma* and without hearing was rendered for the plaintiff on the
report. The defendants excepted.

*Dillingham, Huse & Howland* for the plaintiff.

*Senter & Goddard* for the defendant Marvin.

WATSON J. Prior to April, 1888, Frank C. Griswold was
in the employ of the plaintiff as superintendent of agencies, and
as such, had authority to appoint agents and make arrangements

and trades with them, subject to the approval of the company, and thus he continued until after the execution and delivery to the company of the bond in question by the defendants on the 17th day of October, 1893. Acting in that capacity, Griswold, in April, 1888, employed the defendant, Myron F. Chase, to work for the plaintiff, and within a month thereafter, Chase entered upon his employment and thenceforth thus continued until April, 1896. At the time of Chase's first employment, the plaintiff advanced to him about three hundred dollars, understanding from his statement to Griswold that he was to use it to pay a note of the same amount to Mr. Bull, agent of the Phœnix Mutual Life Insurance Company, which amount, Chase, afterwards and before the giving of the bond in question, repaid to the plaintiff.

On the first day of April, 1893, Chase and the plaintiff entered into a written contract whereby the former was made the general agent of the latter at Montpelier and vicinity, to solicit and procure applications for insurance, deliver policies issued thereon, also premium receipts upon payment to him of the moneys named therein; and Chase was to hold the moneys thus collected as a fiduciary trust, not apply them to any personal use or purpose whatever, keep full and accurate accounts thereof, and on or before the fifth day of every month, transmit to the plaintiff a full and true report of all collections made, and of all expenses incurred, and therewith transmit and pay over the amount of moneys due the plaintiff, received by him, as such agent, and not before paid over; and that he should furnish to the plaintiff and maintain with it, a sufficient and satisfactory bond for the faithful performance of the duties pertaining to his agency, and for the prompt payment of all moneys and securities received by him.

About two weeks prior to the giving of the bond in suit, Griswold came to Montpelier, in his representative capacity for the plaintiff, and found that Chase had collected and not accounted for premiums of the plaintiff, amounting to between a

thousand and twelve hundred dollars, whereupon Griswold and Mr. Hudson, the plaintiff's secretary, who was also present, agreed with Chase that he might continue in the plaintiff's employment upon condition that he pay the shortage and furnish a new bond. Thereafter and before the giving of the new bond, Chase, through his friends, procured the amount of his arrearage and paid the same to the plaintiff.

With matters standing in this way, the bond in question was executed and delivered to the plaintiff on the 17th day of October, 1893, conditioned that, " Whereas the above named M. F. Chase has been appointed by said company its agent for the purpose of procuring applications for life insurance, collecting premiums thereon, and performing such other duties in connection therewith as may be entrusted to him ; now, if the said Myron F. Chase shall promptly pay and deliver over all moneys belonging to said company, in his possession or under his control, or for which he shall be liable and responsible, under the terms of this contract with said company, and shall render regular, true and full accounts to said company of all property belonging to it in his hands, and shall faithfully discharge his duties as agent of said company, then this obligation shall be null and void ; otherwise," in full force.

This bond was signed by the other defendants as sureties for Chase, and the plaintiff's agent, Griswold, was present when Ellis and when Marvin signed it and had an opportunity to disclose to them, respectively, all facts in reference to advancement of money to Chase by the plaintiff, and in reference to Chase's previous delinquencies and defalcations while in the plaintiff's employ, but made no disclosure to either of them, nor to either of the other sureties, relative thereto, by reason whereof the sureties contend that they are not liable upon the bond.

Chase ceased to do business for the plaintiff on April 15, 1896, at which time he had failed to pay over to the plaintiff its moneys that he had collected, in the performance of his duties

as agent, to the amount of $1029.04. This money he had converted to his own use.

The facts reported show that Chase's shortages occurred from the beginning of his agency and continued throughout the same, and that a part of the money used by him causing the defalcation discovered just prior to the giving of this bond, was used to repay to the plaintiff the advancement of $300; and that the money borrowed by Chase to pay that defalcation was repaid by again using the plaintiff's money and thereby causing the defalcation for which recovery is sought in this suit.

All of this money came into Chase's possession or under his care by virtue of his employment, and he fraudulently converted the same to his own use in violation of the terms of his trust, and, evidently, it was to guard against any loss resulting to the plaintiff by reason of a similar breach of trust in the future, that a new bond was demanded as one of the conditions of his remaining in the plaintiff's employ.

It is contended in behalf of the plaintiff that the prior shortages did not amount to embezzlement or dishonesty on the part of Chase, but with this contention we cannot agree.

The facts reported show him guilty of a fraudulent conversion to his own use, without the consent of his employer, of money that came into his possession or under his care, by virtue of his employment as agent, for which he was liable criminally, under the provisions of section 4951, V. S.

It was the duty of the plaintiff, knowing that the other defendants were about to sign, as sureties, Chase's bond conditioned as is the one in question, to fully disclose to them and each of them the facts relative to Chase's previous defalcations or fraudulent conversions, and the conditions under which he was allowed to remain in the plaintiff's employ. No such disclosure was made, and the sureties had a right to understand that the plaintiff was acting in good faith toward them, and that the previous dealings of Chase with the plaintiff had been with integrity and not in criminal breach of his trust.

The plaintiff, through its authorized agent, then knew or had reason to believe that, were the facts as to Chase's previous malpractices made known to the sureties, their intended actions relative to the signing of the bond would probably be changed; and to allow them to sign it, under the circumstances, without giving them such information, was not acting in good faith and was such a fraud upon their rights by the plaintiff, unless they were otherwise informed relative thereto, as will operate to discharge the sureties from all liability upon the bond. *Richmond* v. *Standclift*, 14 Vt. 258; *Sooy et al.* v. *State of New Jersey*, 39 N. J. L. 136; 1 Story Eq. Jur. sec. 215.

We think the law upon this subject is well stated by Chief Justice Beasley in *Sooy et al.* v. *State of New Jersey*, that, " It is the duty of a person taking a guaranty for the good conduct of an employee, to disclose the past malpractices of such employee in the course of the business to which the guaranty relates, and that if such duty is not performed, the instrument so taken is, *ipso facto*, invalid.   The continuance of an agent in an employment is an act so expressive of trust and confidence that it is tantamount to an express declaration to that effect, and hence it must, under usual circumstances, have all the effect of a meditated fraud, if the person so retaining the agent can be permitted to disown the implication inevitably arising from his own conduct."

But it is contended by the plaintiff that the facts reported do not show the sureties without knowledge or information concerning the past malpractices of Chase, when they signed and delivered the bond, and therefore, under the law as laid down in *State* v. *Bates*, 36 Vt. 387, they are not relieved from liability. It is true, the record does not show how the fact was in that regard, and the plaintiff's contention is sound as the case now stands; but we think that no final disposition of the case should be made, until the fact of whether the sureties did or did not have such knowledge or information, is made a part of the record; and that then, judgment should be rendered accordingly.   And

judgment will be reversed *pro forma,* and cause remanded for that purpose.