E. A. JONES ET AL. *v.* CHARLES H. STEARNS, ADMR., ET AL.

October Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed August 30, 1923.

*Fraud—Effect of Legatee Entitled to Life Support Procuring Support Otherwise by Fraud—One Accepting Benefits of Fraud Knowingly Cannot Disclaim Responsibility for the Fraud—Principal and Agent—Remainderman and Life Tenant — Equity — Jurisdiction — "Adequate Remedy at Law"—Negligence of Party Deceived by False Representations.*

1.  Complaint *held* to state a case of actionable fraud by intestate, in inducing plaintiffs to furnish her support in their own home, by means of her false and fraudulent representations to them, and upon which they relied, that she was without means of support and destitute, whereas she then had available and

under her custody and control all the estate of her deceased husband, which he had willed to her for her life support, the remainder, if any, at her decease to defendant legatees, the estate being ample for such support.

2.  Where one person acts for another who accepts the fruits of his efforts, knowing the methods used, the latter is deemed to have adopted those methods, and, even though innocent of fraud when committed, he may not receive the benefits thereof and disclaim responsibility for the means used.

3.  While the foregoing doctrine is most frequently applied to instances where a principal accepts the benefits of his agent's fraud, it is not confined to those cases.

4.  A remainderman who accepts the fruits of fraud committed by the life tenant for the benefit of the estate in remainder, knowing the facts, thereby adopts and ratifies the latter's methods, and is liable therefor.

5.  Under G. L. 1487, defining the powers of the court of chancery, created pursuant to constitutional authority, to be the same as those of the English chancery court except as modified by the Constitution and laws of this State, the jurisdiction of the court of chancery extends to all cases of fraud where there is no adequate remedy at law.

6.  An "adequate remedy at law" means one "as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity."

7.  Complaint *held* to show that plaintiffs remedy at law was inadequate.

8.  Where it appears that plaintiff has been induced to act by fraudulent misrepresentations or wilful concealment, the defendant may not say that plaintiff might have discovered the wrong and prevented its accomplishment but for his own neglect.

APPEAL IN CHANCERY. Bill to determine the amount due plaintiffs for the care and support of one Rosepha A. Palmer, intestate, after the decease of her husband, and to have certain property adjudged a trust fund for the payment thereof. Heard on demurrer to the bills at the June Term, 1921, Windsor County, *Fish*, Chancellor. Decree adjudging bill insufficient and sustaining demurrer. From this ruling the plaintiffs appealed, but the appeal was dismissed on the ground that the order dismissing the demurrer was not a final decree (see 96 Vt. 138,

117 Atl. 663). · A new decretal order was made by ·the same chancellor on August 8, 1922, sustaining the demurrer, adjudging the bill insufficient, and dismissing the bill. The plaintiff appealed therefrom. The opinion states the case. *Reversed, complaint adjudged sufficient, and cause remanded.*

*Theriault & Hunt* for the plaintiff.

The probate court has equitable powers in the administration of proceedings where the title involved is a legal title, but has no jurisdiction or equitable powers where the title is equitable. *Leonard* v. *Leonard,* 67 Vt. 318; *Wetmore & Morse* v. *Bertoli,* 87 Vt. 257.

A trust fund is not liable to levy of execution thereon because of a debt of the *cestui que trust. Williams* v. *Fullerton,* 20 Vt. 346; *Hart* v. *Bank,* 33 Vt. 252.

Where a bill is in the nature of a creditor's suit, it is not necessary to exhaust the remedy at law, where equity jurisdiction is original by reason of special equities involved or because .predicated upon a trust relation and the existence of fraud. Case Note, 23 L. R. A. (N. S.) 102 *et seq.; Case* v. *Beauregard,* 101 U. S. 688; *Russell* v. *Clark,* 7 Cranch 87; *Toulmen* v. *Hamilton,* 7 Ala. 362.

Equity allows the creditor to avail himself of the interest which the beneficiary had. *Maynard* v. *Cleaves,* 149 Mass. 307; *Evans* v. *Wall,* 159 Mass. 164; *Wetmore* v. *Wetmore,* 145 N. Y. 520; *Halstead* v. *Davison,* 10 N. J. Eq. 290.

When it is sought to subject trust property to the payment of debts chargeable against it, the proceedings should be· in equity. *Johnson* v. *Smith,* (Fla.) 80 So. 184; *Feldman* v. *Preston,* (Mich.) 160 N. W. 655; *Huntington* v. *Jones,* (Conn.) 43 Atl. 564.

A bill to establish an equitable lien upon a trust fund affords equity jurisdiction. *Barnes* v. *Dow,* 59 Vt. 530.

In equity, a person for whose benefit a trust is created may compel its performance, although not a party to the contract or instrument which created it. *Rodney* v. *Shankland,* (Del.) 12 A. D. 70; *Murphy* v. *Whitney,* 140 N. Y. 541; *Oberndorf* v. *Loan .& Trust Co.,* 208 N. Y. 367.

As a rule creditors· or persons who have rendered service to· the *cestui* may reach the beneficial interest by proceedings· in

equity.   2 Perry on Trusts (6th ed.), § 815a; *Kupferman* v. *McGehee*, 63 Ga. 250; *Carey* v. *Kemper,* 40 Ohio St. 79.

*F. G. Fleetwood* for the defendants.

A creditor's bill will not lie to reach the interest of a beneficiary of a trust created by a third person, by a provision for comfortable maintenance and support out of the income of the estate. *Seymour* v. *McAroy,* 121 Cal. 438, 41 L. R. A. 544; *Garland* v. *Garland,* 87 Va. 758, 24 A. S. R. 682.

SLACK, J.   This is a suit in chancery, and is here on plaintiff's appeal from a decree sustaining a joint demurrer of all the defendants to the complaint.

The material allegations of the complaint are these:   S. N. Palmer died testate at Morristown, Vermont, in 1906.   By the terms of his will, which was duly probated in the district of Lamoille, he devised and bequeathed all of his real and personal property to his wife, Rosepha A. Palmer, "for her special use and support during her life time," and the remainder if any, at her decease, to certain named legatees.   She was sole executrix of this will, and acted as such until her decease, July 31, 1920.   August 21, 1920, the defendant Stearns was appointed administrator *de bonis non,* with the will annexed, of S. N.'s estate, and is still acting as such.   September 10, following, the defendant Farrington was appointed administrator of Rosepha's estate and is still acting in that capacity.   The other defendants are the residuary legatees named in S. N.'s will.   S. N.'s estate was sufficient in amount, at all times, to provide suitable support for Rosepha so long as she lived; and she had the possession, control, and use thereof from November 24, 1906, until her decease.   The plaintiffs are husband and wife, the latter being a niece of Rosepha.   In the fall of 1914, Rosepha falsely and fraudulently represented to the plaintiffs that she was without sufficient means for her support and was unable to pay therefor, and that unless the plaintiffs would take her into their home and there support her without charge, she had no place where she could go, and that she could not live where she had to pay board because she had nothing to pay with.   Subsequently, on divers occasions, she made like false and fraudulent representations concerning her financial ability to pay for her support.   She

knew that all these representations were false when she made them, and made them with intent to deceive and defraud the plaintiffs, and induce them to furnish her support in their home free of charge. The plaintiffs had no knowledge of the provisions made by S. N. for Rosepha's support, or that the representations made by her were false and fraudulent until after her decease, but on the contrary believed such representations to be true, and believed that unless they supported Rosepha, she would become an object of outside charity, and relying solely upon such representations, the plaintiffs furnished her care and support in their home the large part of each year, from sometime in the fall until the following spring or early summer, from November 1, 1914, to May 22, 1920.

The prayer of the complaint is that, the amount due the plaintiffs for such care and support may be determined, and that it may be adjudged that Rosepha held the estate given her by her husband's will in trust for the payment of the amount due, and that said estate, or so much thereof as may be necessary, may be charged with, or applied to, the payment of plaintiffs' claim, and for general relief.

The grounds of demurrer assigned are (1) want of equity in the complaint, and (2) an adequate remedy at law.

The defendants contend that since no contract, express or implied, is alleged, the parties must have understood at the time the services were rendered that they were gratuitous and, therefore, no liability to pay for them exists, and cite *Lamay* v. *Vantyne*, 40 Vt. 501, where it is said that, "If it appears that the parties understood at the time that the services * * * * * were gratuitous, no liability to pay for them can be implied. An implied promise cannot be raised contrary to an express understanding." This is undoubtedly a correct statement of the law, when applied to implied contracts in fact as distinguished from "*quasi* contracts" or contracts implied in law. Whether applicable to contracts of the latter kind we need not inquire, since the complaint is not constructed on that theory. The gravamen of the complaint is fraud, which the allegations show must have been committed in the interest of the trust estate; and it is sought to charge that estate with the result of the fraudulent methods employed for its benefit.

[1]  We think that the complaint clearly states a case of actionable fraud on the part of Rosepha. This conclusion is sus-

tained by *Anderson* v. *Eggers*, 63 N. J. Eq. 264, 49 Atl. 578, 55 L. R. A. 570. There the complainants were induced to support the deceased several years by her fraudulent pretense that she was destitute, when in fact she had a considerable amount of money in the bank, and it was held that they were entitled to be recompensed out of her estate for the money and property so furnished her. See also *Edwards* v. *Owens*, 15 Ohio, 500, where it is held that one who by false representations that he is insolvent induces his creditor to discharge a note on payment of less than its value commits an actionable fraud.

We next consider whether the fund which S. N. intended and created for Rosepha's life support can be reached to answer for the fraud which she perpetrated to keep that fund intact; or whether the residuary legatees are entitled to the estate that remained at Rosepha's decease regardless of the methods employed by her to prevent a diminution thereof.

[2-4] It is a well established principle of law that, where a person acts for another who accepts the fruits of his efforts, knowing the methods used, the later must be deemed to have adopted those methods, as he may not, even though innocent of the fraud when committed, receive the benefits thereof, and at the same time disclaim responsibility for the means by which they arose. *Green* v. *Waddington*, 210 N. Y. 79, 103 N. E. 964; *Lantin* v. *Goodnow*, 207 Mass. 291, 93 N. E. 843; *Bailey* v. *London Guarantee, etc., Co.*, 72 Ind. App. 84, 121 N. E. 128. While this doctrine is most frequently applied in instances where a principal accepts the benefits of his agent's fraud, it is not confined to those cases. Suppose that A. who is possessed of B.'s horse, either for hire or as agister, induces C. to purchase the same by means of false representations as to its soundness or characteristics, and B. with knowledge of the facts, accepts the avails of the sale, can he escape liability for A.'s fraud? Certainly not. By accepting the benefits of A.'s efforts not only does B. adopt A.'s assumed authority to act but he ratifies the means employed by him to effect the sale. Likewise, a remainderman who accepts the fruits of fraud committed by the life tenant for the benefit of the estate in remainder, knowing the facts, thereby adopts and ratifies the latter's methods, and is liable therefor.

" While it is not alleged that in perpetrating the fraud complained of, Rosepha was acting for or on behalf or in the interest

of S. N.'s estate, or the residuary legatees, enough appears to show that her fraud necessarily inured to their sole benefit. She was entitled to the use of the property for her support "during her life time" and no more, and what was not so used went to the residuary legatees. There was ample property for her support, and, since all of her rights and interest therein terminated at her decease, she could have had no purpose or interest in keeping it, or the major part of it, intact, other than that S. N.'s estate, and consequently the residuary legatees, might receive the benefit thereof.

[5, 6] The defendants have not yet accepted the benefits of Rosepha's fraud, because prevented from so doing by these proceedings, but that they intend to, and will, if they have an opportunity, notwithstanding the knowledge they now have of the means it is claimed she employed to keep the estate intact, is apparent from the attitude they have assumed herein. To permit this would be, not only inequitable but contrary to the manifest intention of the testator. That he did not intend that his widow should become an object of charity, public or otherwise, is obvious from the testamentary provision which he made for her; and while he did not charge this fund, in express terms, with her support, he created and set it apart for that express purpose, giving to the residuary legatees only what remained after that purpose had been fully accomplished. It is fair to assume, the contrary not appearing, that he expected that that purpose would be accomplished in the ordinary manner, and not that his widow would resort to the fraudulent practices here charged; and that he intended the residuary clause of his will to cover such of his estate as remained after an honest use by the life tenant, and not such as she might accumulate or save by means of the fraudulent methods to which she resorted. The equities of the case are with the plaintiffs, and that the court of chancery has jurisdiction of the matter, we entertain no doubt. Our court of chancery was created pursuant to constitutional authority (Const., Chapter 2, Art. 5) in 1797. Rev. 1797, p. 125. From that time to the present, the powers of that court as defined by statute, have been substantially as now declared by G. L. 1487, namely: "There shall be a court of chancery, the powers of which shall be vested in a chancellor; and the powers and jurisdiction * * * * shall be the same as those of the court of chancery in England, except as modified by the constitution and laws of

this state.'' The jurisdiction of the court of chancery in England, both at the time the constitutional provision referred to was adopted and when our court of chancery was created, extended to all cases of fraud, except fraudulent wills. See cases cited in *Anderson* v. *Eggers, supra;* 1 Story's Eq. Jur. (14th ed.), § 260; 2 Pomeroy Eq. Jur., § 912. The latter writer says concerning the jurisdiction of the court of chancery in England in cases of fraud: ''The only question, therefore, presented to an English court is, not whether the equitable jurisdiction exists, but whether it should be exercised.'' Many cases may be found, however, where that court refused to exercise its jurisdiction, when the party seeking it had an adequate remedy in another forum.

Whether the jurisdiction of our court of chancery is coextensive with that of the court of chancery in the mother country, in matters of fraud, we need not inquire; certain it is that our court will take jurisdiction in such cases whenever the party seeking its aid has not an adequate remedy at law. This means that the remedy at law, in order to preclude a resort to chancery, must be ''as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.'' *Heath* v. *Bank & Trust Co. et al.,* 79 Vt. 301, 64 Atl. 1127; *Boyce* v. *Grundy,* 3 Pet. 210, 7 L. ed. 655. Or. stated in another way: ''The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances.'' *Kilbourn* v. *Sunderland,* 130 U. S. 505, 514, 32 L. ed. 1005, 9 Sup. Ct. 594; *Allen* v. *Hanks,,* 136 U. S. 300, 311, 34 L. ed. 414, 10 Sup. Ct. 961; *Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, 12, 43 L. ed. 341, 19 Sup. Ct. 77.

[7, 8] The complaint shows beyond a peradventure that, the plaintiffs' remedy at law, if they have one is not adequate, that is, it is not ''as practical and as efficient to the ends of justice and its prompt administration'' as the remedy which they have adopted. We hold that the complaint is sufficient to entitle the plaintiffs to equitable relief. This is none the less so because the plaintiffs might have ascertained Rosepha's financial status by proper inquiry. The doctrine is well established in this State that, where it appears that there has been fraudulent misrepresentations or wilful concealment by which the plaintiff has been induced to act, it is no excuse for, nor does it lie in the mouth of,

the defendant to say that the plaintiff might, but for his own neglect, have discovered the wrong and prevented its accomplishment. *Maidment* v. *Frazier*, 90 Vt. 520, 98 Atl. 987; *Smith* v. *Martin et al.*, 93 Vt. 111, 106 Atl. 666. This rule is equally applicable in this case.

*Decree reversed, complaint adjudged sufficient, and cause remanded.*

NOTE:—MR. JUSTICE MILES having retired took no part in the disposition of this case.