Commercial Credit Plan, Inc. v. Richard H. Beebe, ·Sr. et al

[187 A.2d 502]

September Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 2, 1963

*Loveland & Hackel* for the plaintiff.

*O'Neill, Delany & Valente* for the defendants.

**Barney, J.** The defendants are seeking to avoid payment of a promissory note. They defended successfully below on the ground that the plaintiff, as payee, was barred by fraudulent activities that induced the making of the note. The defendants have refused to make any payments on the note.

The plaintiff is a small loan company authorized to do business in Vermont. The defendants went to the plaintiff to borrow $495.00. This money was advanced on the basis of the credit standing of the defendants and the obligation was evidenced by the promissory note sued on in this case. The plaintiff knew that the money loaned was to be used to purchase a knitting machine from one Edmund Geigle, doing business as Vermont Home Service.

The operations of Geigle and his agents underlie the claims of fraud. Geigle appeared in the Rutland area sometime after the middle of January 1959. He commenced doing business as Vermont Home Service, selling knitting machines. Salesmen were sent out to call on customers to persuade them to buy these machines. As part of the inducement to buy, it was represented that Vermont Home Service would buy back from the purchasers articles made on the machines. The purchasers were left with the impression that there was sufficient demand for these products to enable them to earn money and pay for the machines by knitting different garments. When a machine was sold, arrangements were made with Vermont Home Service to buy knitted articles in accordance with a price schedule set out in a catalog. The sales agreement also provided that within a limited period of time the machines could be returned. Vermont Home Service had in its employ an instructor who gave lessons on how to operate the machines. No claim has been made that the machines themselves were defective or that they did not perform as represented.

The loan to the defendants was made January 28, 1959. From about that time to February 20, 1959 machines were sold, some garments were purchased from some buyers of the machines, and a machine had been returned. About February 20 Geigle disappeared and Vermont Home Service ceased to exist. The promises to purchase knitted articles and to refund purchase money for returned machines became worthless. From the evidence it seems Geigle never intended to carry out the commitments made in the name of Vermont Home

Service. The representations then became from the beginning a part of a fraudulent design to deceive.

Even though these events took place after the loan to the defendants, they contend that the plaintiff was in possession of sufficient information about the activities of Geigle to put plaintiff on notice that the Vermont Home Service operation was a fraudulent scheme. From this premise they argue that plaintiff is barred from recovering on its note.

During the trial the defendants introduced evidence to which they point as showing "bad faith" and "gross negligence" on the part of the plaintiff. It appeared that before the loan to the defendants was made Geigle sent to the office of Commercial Credit Corporation a retail conditional sales contract signed by one Peter DeFrancisco, the first knitting machine customer. This was accepted by Commercial Credit Corporation, but Geigle was informed that that corporation would not accept any more conditional sales contracts from him until his credit had been investigated. He referred them to the Albany and Schenectady offices of Commercial Credit Corporation, but the testimony was that there was nothing in either office to show that any business had ever been done with Geigle. Defendants placed much emphasis on the alleged inability of the corporation and the plaintiff to find and produce the correspondence for the trial. Geigle was told that, in the interim, his customers might be able to qualify for small loans with the plaintiff, who, at the time, shared office space with Commercial Credit Corporation.

This evidence was apparently intended to show that the plaintiff not only had the information that came to it directly, but also all the knowledge that Commercial Credit Corporation had concerning Geigle's activity. In dealing with this appeal we will assume this to be so. It also appeared that the salesmen for Vermont Home Service had pads of blank loan application forms of the plaintiff and of another small loan company, when calling on customers. The check to the defendants, given in exchange for the note, bore a typed endorsement in favor of Vermont Home Service, ready for the defendants' signatures. This appears to have been a usual practice when such a loan was made to take care of a single, large, specific obligation. This endorsement was duly executed by the defendants.

In addition to the foregoing, evidence was introduced by the defendants as to certain practices of the plaintiff with respect to obtain-

ing chattel mortgages in connection with the loans evidenced by its notes. Some of these mortgages were improperly executed, witnessed and notarized. The improper taking of jurats is a practice that must be condemned by this Court where the attestation does not reflect the true facts. In this particular case, these instruments are not relied on to support any claim, so their validity is not at issue.

Somewhere in the course of the proceedings below the fundamental question seems to have become obscured by a mass of evidence calculated to persuade a jury that this note ought not to be honored. The issue is simple. On January 28, 1959 the defendants came to the office of the plaintiff seeking a loan. They executed the note in question and all of the money called for by its terms was delivered. The defendants got full value for the note they signed. This is demonstrated by the evidence and apparently not questioned by the defendants.

The real complaint of the defendants is not that they did not receive full consideration for their promise to pay, but that they were induced, by misrepresentations, to spend the money unwisely. They further say that since the plaintiff was in possession of facts from which it knew or ought to have known that the investment to be made was ill-advised, the money advanced ought not to be repaid. Their contention is that they have sufficiently shown the "bad faith" or "gross negligence" contemplated by *Gramatan National Bank* v. *Beecher,* 121 Vt. 39, 45-49, 146 A.2d 246, to enable the trial court to submit the issue to the jury.

The *Beecher* case relates to a negotiated note whose holder claims the right to collect the note free of any defenses the maker may have against one who fraudulently induced its making. In such a situation a holder may fail because of a showing that he had, in some manner, been exposed to information that did, or ought to have, made him aware of imperfections in the note or defects in the title of the person negotiating the note. *Gramatan National Bank* v. *Pierce,* 121 Vt. 406, 414-15, 159 A.2d 781. If he so ignores the warning signs as to be grossly negligent, or proceeds in spite of knowledge of infirmities, his actions may amount to bad faith under 9 V.S.A. §427. *Howard National Bank* v. *Wilson,* 96 Vt. 438, 451, 120 Atl. 889. In that case the payee of the note who advanced the consideration was a stranger to the transaction between the maker and another that gave rise to the execution of the note. This Court said that in such a case the payee

was in the same position as one to whom the note had been negotiated. Such a payee may likewise claim to take the instruments free of defenses unless it can be shown that he acted in bad faith.

■ By establishing bad faith on the part of the holder, the maker is enabled to bring his defenses based on fraudulent inducement to bear against a stranger to the original transaction. The "bad faith" that is relevant is that which reveals the holder's awareness that the note is somehow tainted. It cannot be established by evidence of improper office practices or careless management that have no legal connection with the note transaction.

This case is not concerned with this issue, in any event. Here the suit is between the immediate parties to the transaction; the maker, and the party allegedly guilty of fraudulent inducement. To prevail, the defendants have only to introduce evidence establishing the fraud they say has been practiced upon them. There has been no transfer or negotiation of the note to complicate the presentation of any defense.

■ It was evidently to this end that the defendants introduced evidence of fraud on the part of Geigle. But this action is not based on the sale of the knitting machine by Geigle, but upon the advance of money by the plaintiff in return for the defendants' promise to repay it with proper interest. These transactions were not identical, and where the facts demonstrate that, in advancing the money, the lender did not himself become otherwise involved in the dealings, they would be considered separate. But loans are frequently the direct product of the sale or trade that creates the need for funds. Furthermore, the fact that a loan is approved may become, to the borrower, like an opinion by the lender that the transaction itself is a wise one. It is here that the burden on the lender may become that of one in a position of trust and confidence, or having superior knowledge or means of knowledge. In such situations he must be circumspect in his conduct and has a duty of full disclosure to avoid a charge of fraudulent concealment. *Newell Bros.* v. *Hanson,* 97 Vt. 297, 304, 123 Atl. 208; and see *Conn. Gen. Life Ins. Co.* v. *Chase,* 72 Vt. 176, 179-180, 47 Atl. 825, 53 L.R.A. 510.

■ If the actions of the lender may have compromised his posture of good faith, however, the jury becomes the judge of his actions. One who accepts the benefits of another's fraudulent acts, knowing of

the methods used, is held to have adopted those methods as his own, even though he may have been innocent of the fraud when committed. *Jones v. Stearns,* 97 Vt. 37, 42, 122 Atl. 116, 31 A.L.R. 653. As that case there points out, this doctrine is not limited to situations involving the relationship of principal and agent, even though it most frequently arises there. In view of the evidence in the case concerning the cooperative activities between the plaintiff and Geigle, involving the solicitation and acceptance of small loan customers and the binding endorsement and delivery of the loan checks through Geigle's organization, there was an issue for the jury. The denial of the plaintiff's motion for a directed verdict was without error.

Mention has previously been made of evidence introduced into the case with respect to the taking of chattel mortgages by the plaintiff in connection with loans. The defendant claimed that evidence bore on good faith and gross negligence. As was previously pointed out, there is no connection between this evidence and the issue on which it was offered.

This same evidence was referred to in the instructions to the jury. The plaintiff made plain its position that this matter had no place in the charge. When the trial court told the jury that this evidence could properly be considered by them in determining the plaintiff's right to recover, it was in error. Since this evidence, under that instruction, tended to prejudice the plaintiff's position, it cannot be assumed to have played no part in the verdict in favor of the defendant. Reversal must follow. *Kinsley v. Willis,* 120 Vt. 103, 112, 132 A.2d 163.

The plaintiff claimed error in a trial court ruling excluding inquiry into the bias of certain witnesses who, like defendants, had purchased knitting machines from Geigle. The plaintiff proposed to ask of these witnesses, on cross-examination, whether or not they had agreed to share the legal expenses of the defendants in this suit. The rule is stated in *State v. Teitle,* 117 Vt. 190, 195, 90 A.2d 562:

> "A reasonable opportunity to show in cross-examination that a witness is unreliable, prejudiced or biased is a matter of right, and much latitude is to be allowed in this line, but the extent to which it shall be permitted to proceed rests largely in the discretion of the trial court, whose action will not be revised here unless an abuse of discretion is shown, and the contrary not appearing, it

will be taken that the ruling was made as a matter of discretion (citations omitted). Stated otherwise, the credibility of a witness is always open to attack, and a wide latitude is allowable to a cross-examiner for the purpose of showing who and what the witness is."

The line of questioning proposed here went to the interest of the witness in the pending litigation. Denying the inquiry in this case was an unreasonable restriction of the right to develop the partiality of the witness, and an abuse of discretion. The factual issue bore directly upon the relationship of the witness to this case, and it was error to bar the examination.

The plaintiff also objected to the admission into evidence of the record of Geigle's conviction of mail fraud in connection with the sale of knitting machines in federal court. At the time it was offered, the trial court ordered the deletion of certain statements of the sentencing judge in connection with his disposition of the case. These were offered by the defendants as evidence of an agency relationship between the plaintiff and Geigle. They had no such evidentiary tendency in fact, and were properly deleted.

The record of the conviction itself was then received, with the plaintiff persisting in its objection. The defendants say, in support of admission, that the fact of Geigle's conviction had already sufficiently appeared in the evidence to make the receipt of the record, if improper, at least harmless. From the testimony in the case, this is clearly so, and we will not predicate error on the admission of the record in this case. *Wakefield* v. *Levin,* 118 Vt. 392, 395, 110 A.2d 712.

Since a new trial is required, it is unnecessary to treat the other claims of error, because they undoubtedly will not arise in the same form in a subsequent proceeding. *Ripley* v. *Spaulding,* 116 Vt. 531, 532, 80 A.2d 375.

*Judgment reversed and cause remanded.*