**James TOLAN and Judith Tolan, and Providence Washington Insurance Company, Appellants,**

**v.**

**ERA HELICOPTERS, INC., Appellee.**

**No. 7801.**

Supreme Court of Alaska.

April 19, 1985.

Rehearing Denied May 23, 1985.

Mark A. Sandberg, Randolph W. Hunter, Camarot, Sandberg & Hunter, Anchorage, for appellants.

Clark Reed Nichols, Perkins, Coie, Stone, Olsen & Williams, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

I.

On September 24, 1978, James Tolan slipped and fell, injuring his back while getting out of a helicopter owned by ERA Helicopters, Inc. At the time of the accident Tolan was employed by a third party and received worker's compensation benefits from his employer's insurer, Providence Washington Insurance Company.

Tolan and his wife Judith sued ERA for negligently failing to provide a safe method of egress from the helicopter, for negligently failing to provide instructions or warnings concerning the safe method of egress from the helicopter and for breaching an implied contract of safe carriage. ERA answered and made a timely motion to join Providence Washington Insurance Company as a plaintiff. Providence had at the time of the motion paid Tolan some $84,000.00 in worker's compensation benefits attributable to the accident and had entered into a litigation agreement with the Tolans. By the terms of the agreement, Providence would advance all costs and reimburse the Tolans for any expenses they incurred as a result of the litigation; the attorneys prosecuting the case would receive forty percent of any recovery; Providence would receive forty percent until its claim had been paid, less attorney's fees; the Tolans would receive twenty percent of any recovery until Providence's claim was paid and thereafter sixty percent (100% less the forty percent contingent fee).

The trial court initially denied ERA's motion to join Providence. ERA moved for reconsideration of this denial based on an unpublished decision of this court in another case holding that a partially subrogated insurer is a real party in interest under Civil Rule 17(a). The trial court granted reconsideration and ordered Providence joined as a party plaintiff "because it is the real party in interest for amounts it has paid as worker's compensation insurance benefits...." The Tolans in turn sought and were denied reconsideration.

The Tolans' claim for breach of implied contract was dismissed prior to trial on ERA's motion. In the ensuing jury trial on the negligence claims, Providence's claim was explained by the court to the jury, and the jury was eventually presented with the agreement between the Tolans and Providence, except the provisions relating to attorney's fees, which were blanked out. The jury rendered a special verdict finding ERA negligent, but finding that ERA's negligence was not the legal cause of Tolan's injuries. The Tolans' motion for judgment notwithstanding the verdict was denied.

On appeal the Tolans contend that the collateral source rule should have preclud-

ed any mention of Providence's involvement to the jury; that their motion for judgment notwithstanding the verdict should have been granted because ERA's negligence necessarily was a legal cause of some injury to Tolan; that the court erred in dismissing their implied contract claim; and that the court erred in giving an instruction relating to liability for activation of a latent condition.

II.

We turn first to the Tolans' contention that the collateral source rule precluded mention of Providence's payment to Tolan. In *Ridgeway v. North Star Terminal and Stevedoring, Inc.*, 378 P.2d 647, 650 (Alaska 1963) we adopted the collateral source rule, expressing it as follows:

> The general rule is that it is improper to bring before the jury information regarding the injured plaintiff's right to workmen's compensation benefits. To do so is generally held to be reversible error, requiring a new trial.
>
> The rule is based on the principle that a tort-feasor is not entitled to have his liability reduced merely because plaintiff was fortunate to have received compensation for his injuries or expenses from a collateral source, and on the assumption that knowledge of that fact will more likely than not influence the jury against the plaintiff on the issue of liability and damages.

(Footnotes omitted).

The collateral source rule thus prohibits the reduction of a plaintiff's damages when he has received compensation from another source. It also has an evidentiary role, excluding evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages. *Id.*

ERA's motion to reconsider the court's order denying its motion to join Providence as a real party in interest was based on our unpublished order in *Vertecs Corp. v. City of Yakutat,* No. 6308 (1982), where we held that a partially subrogated insurer is a real party in interest under Civil Rule 17(a). A few months subsequent to our order in *Vertecs* we published our opinion in *Truckweld Equipment Co. v. Swenson Trucking and Excavating, Inc.*, 649 P.2d 234 (Alaska 1982), also holding that a partially subrogated insurer can be joined by a timely motion under Civil Rule 17(a). In *Truckweld* we stated that "[w]e are not impressed by abstract claims of prejudice resulting from the jury's knowledge of partial coverage. Insurance is a widely accepted fact of life." *Id.* at 238 n. 4. We also noted that the insured had a choice whether or not to sue for the amount which had been paid by the insurance company.

> The insured party may choose whether or not to sue for the amount for which it has been reimbursed. If it chooses to include the insurer's portion of the claim along with its own, then we think it only reasonable that the insurer also make an appearance.

*Id.* at 238.

Both *Vertecs* and *Truckweld* involved claims for damage to property where the property owner had been partially reimbursed by insurance. In *Exxon Corp. v. Alvey,* 690 P.2d 733 (Alaska 1984), we had occasion to consider whether the *Truckweld* rule should be applied to force the joinder as a plaintiff of an employer who had paid worker's compensation benefits. We answered that question in the negative, noting that under AS 23.30.015(g) the injured worker has no choice but to include in his claim the total amounts paid by the employer. 690 P.2d at 745. We also observed that under AS 23.30.015(b) the injured worker is authorized to sue on his own behalf and for the benefit of the employer if he sues within one year after an award. Thus, the worker is, in the terms of Civil Rule 17(a), "a party authorized by statute [who] may sue in his own name without joining with him the party for whose benefit the action is brought...." *Id.* The ability of an insured to choose whether or not to sue for the insurer in the ordinary insurance context, in contrast to

the absence of choice in the worker's compensation context, was emphasized:

> We note that in the usual subrogation context, the plaintiff can choose to sue for his own damages leaving the subrogee to his own lawsuit in order to recover his share. However, under section AS 23.30.015(g), the insured worker may not sue solely for unsubrogated sums. Thus, in the ordinary case the plaintiff concerned about undue confusion or prejudice caused by joinder of a subrogee can decline to sue for the subrogee's claims. This option is not available to the injured worker.

*Alvey,* 690 P.2d at 744, 745.

Our decision in *Alvey* plainly means that Providence should not have been joined as a real party in interest. That fact, taken alone, does not necessarily require reversal. For example, if the trial judge had ordered Providence joined but precluded mention of the fact of its participation to the jury, the trial would not be tainted. We are not presented with that situation here, however. Even so, ERA argues that evidence of Providence's payment of benefits to Tolan was properly presented because it was relevant for reasons independent of the reduction of damages, which is the prime evil sought to be prevented by the collateral source rule.

It is true that the receipt of compensation benefits may be admissible if offered for a purpose other than the diminution of the plaintiff's damages. When such an offer is made the court should not automatically admit or reject the evidence. It must weigh its probative value against the dangers of unfair prejudice and confusion of the issues and the jury. Ak.R.Evid. 403; *DeMedeiros v. Koehring Co.,* 709 F.2d 734, 740–41 (1st Cir.1983). This decision is a discretionary one reviewable only for an abuse of discretion. *Alaska Northern Dev., Inc. v. Alyeska Pipeline Serv. Co.,* 666 P.2d 33, 42 (Alaska 1983). If, therefore, Tolan's receipt of benefits would have been properly admitted for reasons independent of damage reduction, the court's error in requiring that Providence be joined should be considered harmless.

ERA notes that "on direct examination, Tolan testified that nobody had ever asked him who he thought was at fault for his accident." This, according to ERA, opened the door for cross-examination of Tolan concerning various statements given to his employer and investigators for Providence which inevitably would lead to disclosure that Tolan had been paid worker's compensation. The statements cited by ERA to justify this argument are not compelling for there is nothing in them in conflict with Tolan's statement that he had not been asked his opinion as to who was at fault.[1]

ERA also contends that various statements made by Tolan to Glen Smith, an

1. The statements are: (1) Tolan's oral statement to claims representative Kerry Davis on October 24, 1978 (Tolan: "[A]s I recall she was doing the interview and if she asked the questions, I gave her the answers. But that's all I can recall."); (2) Tolan's recorded interview with Davis taken November 24, 1978 (No fault questions were asked); (3) Tolan's statements to Glen Smith, discussed *infra* p. 1269; and (4) The "Employer's Notice of Injury" form, signed by Andrew Potts, an officer of Tolan's employer, on October 6, 1978, following a telephone call from Tolan on September 25th. One item of the printed form stated: "If the accident was caused by anyone besides workman, give name and address," after which Potts inserted "n/a". Potts also answered "no" to another item which asked "Was accident caused by failure of a machine or product?" Potts did not state that he had asked Tolan fault related questions. The essence of Potts's testimony is capsulized in the following statement: "I had to have a discussion with him as to what happened in order to have filled out Item 34 (sic: 38) which says, "slipped while climbing out of helicopter, landed on right foot and rear against aircraft pontoon." ERA has not furnished us with transcript cites showing that Tolan was ever examined concerning the conversation he had with Potts.

There is one statement made by Tolan on a form entitled "Personal Injury Report," exhibit 11, in which he checked a box entitled "No Unsafe Condition" following a request: "If the accident resulted from an unsafe condition mark proper box below." Tolan properly was cross-examined concerning this statement. It is irrelevant to the present discussion, however, because it does not imply that Tolan had made a claim for worker's compensation benefits and thus cannot be used to support ERA's argument that such evidence was properly presented.

employee of Providence, were necessarily admissible as admissions and prior inconsistent statements. ERA mentions Tolan's identification of Sea Airmotive, another helicopter company, as the company flying him at the time of the fall and his "failure to identify any fault of the pilot." The latter point, however, was not in conflict with Tolan's statement that no one had asked him his view as to who was at fault. With respect to the former, Tolan had previously admitted mis-identifying the owner of the helicopter in question; the fact that he had also done so in his interview with Smith was merely cumulative. Further, as to all the statements made by Tolan to Providence's representatives, or to his employer, the content of the statements could have been elicited without revealing that Tolan had either made a claim or had received worker's compensation benefits.

ERA also suggests as another justification its cross-examination of Dr. Reese. Dr. Reese testified that Tolan suffered a twenty-two percent impairment of the whole man, whereas his previous opinion was that Tolan's impairment was only seventeen percent. On cross-examination, ERA's counsel elicited testimony from Dr. Reese that the previous rating was made for worker's compensation purposes. Why this is admissible is unclear. Dr. Reese did not state that the rating was irrelevant for the purposes of evaluating damages in the personal injury claim. If anything the rating was irrelevant to the compensation claim, where the whole man method has long been discredited.[2]

ERA also contends that the agreement between Tolan and Providence concerning the lawsuit was admissible and properly admitted. ERA's argument is that the agreement gave an incentive to Tolan to fabricate his testimony and thus was admissible to show the bias of Tolan. We disagree. Most parties are biased in favor of their own cases. There was nothing extraordinary about the agreement between Tolan and Providence which would in any way alter Tolan's expectable bias.[3] The fact that Tolan's litigation costs were being paid by Providence does not demonstrate that he would be more apt to lie than if he was paying his own costs. If anything, his financial interest was thereby lessened.

The risks of prejudice, jury confusion, and waste of time resulting from the admission of litigation agreements are considerable. The jury may think that the agreement is illegal or immoral or the jury may believe that the agreement is relevant to questions of liability or damages. There is a substantial danger, as this case illustrates, that the court and the parties will spend a lot of time determining what parts of the agreement should and should not be admitted and in exploring and explaining what the agreement means and how it bears on the parties' motives. We conclude that the fact of Tolan's receipt of compensation benefits could not be presented to the jury on independent grounds.

We have concluded thus far that Providence should not have been joined as a party plaintiff; that the fact that Tolan received worker's compensation benefits should not have been presented to the jury; and that there exists no independent justification for admitting this fact. It remains to inquire whether these conclusions require reversal.

Under *Ridgeway v. North Star Terminal and Stevedoring, Inc.*, 378 P.2d 647, 650 (Alaska 1963), we noted that it is gen-

2. *Hewing v. Alaska Worker's Compensation Board,* 512 P.2d 896, 899–900 (Alaska 1973).

3. If an agreement changes the normal biases of a party, that fact should be placed before the trier of fact. *Breitkreutz v. Baker,* 514 P.2d 17, 28–29 (Alaska 1973); *See* Ethics opinion of the Alaska Bar Association, No. 74–1 (1974) ("Agreements which change the anticipated alignment of one or more parties may be distinctly useful in accomplishing such legitimate litigation objectives as compensating an injured party and limiting the potential liability of a defendant; however, to guard against an express or implied misrepresentation of a party's actual interest after such an agreement is made, it is essential that there be disclosure of such an agreement to the court and to all the parties when the agreement is made.")

erally reversible error to bring before the jury information regarding the plaintiff's right to receive worker's compensation benefits. In *Ridgeway,* we followed this general rule, noting that there had been repeated questions and arguments by counsel relating to the fact that plaintiff had applied for and received worker's compensation benefits. Worker's compensation was mentioned by the defendant's counsel in closing argument, who argued that the plaintiff's doctor's bills had been paid. The trial court twice instructed the jury that worker's compensation coverage was "strictly immaterial to the case."

The facts presented by this case seem considerably more compelling than those of *Ridgeway.* At the outset the court instructed the jury that Providence was a plaintiff and was seeking to recover worker's compensation payments that it had paid to Tolan. Tolan and Providence's employee, Smith, were questioned extensively about their motives in making the litigation agreement and eventually most of the agreement was admitted in evidence. Although the court instructed the jury that the agreement was lawful, that did not prevent ERA's counsel from arguing in his final argument to the jury that it was dishonorable. Counsel stated, near the beginning of his summation:

> Exhibit 1 explains why we're here today. Exhibit 1 is the agreement between Providence Washington Insurance Company and James Tolan for the prosecution of this lawsuit. It shows that Providence Washington is going to advance all the costs of the litigation, all the expenses of the litigation, and it's going to give Mr. Tolan priority as to the recovery. This is a risk free shot at ... ERA. A man who has not sued prior to getting a safety net. "It's not going to cost you a dime to go after ... ERA, we're going to finance it and we're going to hide in the background, push you forward and let you go at it."

In his penultimate conclusion counsel stated even more colorfully:

> The lawsuit started being filed, and ... ERA Helicopters had to come forward and start finding out what the facts really were after April 21, 1980, after Jim Tolan was given a free grab at the brass ring. "I'll let you reach out there off your hobby horse and reach for the golden ring, and we guarantee we'll put a safety net under you. You're given a risk free shot. Not going to cost you anything, all we need is your name, and of course we're going to need a story."

There may well be cases in which there is an unexcused violation of the collateral source rule which is nonetheless so incidental, so little emphasized in the course of a trial, that it amounts to harmless error. However, in this trial Tolan's relationship with Providence was a major theme of the defense. Its exposition and use can not be considered harmless error.

## III.

We next address the Tolans' claim that the court erred in failing to grant their motion for judgment notwithstanding the verdict. Question number one of the special verdict was: "Is it more likely than not that the defendant was negligent?" The jury answered yes. Question number two was: "Is it more likely than not that the defendant's negligence, if any, was the legal cause of James Tolan's fall and his resultant injury?" The jury answered this question no. The Tolans argue that no reasonable jury could conclude that ERA's negligence was not a proximate cause of some injury suffered by Tolan. On this basis they contend that the court erred in failing to grant their motion for judgment notwithstanding the verdict.

Instruction number twenty-four defined a legal cause as that cause which exists where a negligent act more likely than not is a substantial factor in bringing about an injury. Substantial factor in turn was defined as existing where the evidence shows that it is "more likely than not that: (1) the injury would not have occurred but for the person's negligence; and (2) the negligent act or omission was so important in bring-

ing about the injury that reasonable men would regard it as a cause and attach responsibility to it."

Tolan advanced various theories of negligence, among them that he should have been warned to get out of the helicopter facing forward rather than backward, that the place where he put his foot should have had better abrasion, that the main rotor and the tail rotor should have been turned off before allowing passengers to exit the helicopter, and that he was not warned that the inflatable floats would tend to give when his weight was applied to them. Especially with respect to his theory that ERA negligently failed to shut down the rotors, it is possible that the jury could find negligence but still find that this omission was not important enough to be considered the legal cause of the accident. Since reasonable persons could differ in their judgment on this point, the court did not err in refusing to grant the motion for judgment notwithstanding the verdict. *Mullen v. Christensen,* 642 P.2d 1345, 1348 (Alaska 1982).

IV.

Another point relates to the court's dismissal of the Tolans' claim for breach of an implied warranty of safe passage. No common law jurisdiction, so far as we are aware, has adopted such a theory. The Tolans suggest that the warranty which should be implied would be breached "by the simple failure of a common carrier to safely transport its passenger. Injury alone would be enough." This evidently means that should a passenger slip and fall while on an aircraft, or while disembarking from one, the air carrier would be legally responsible even if the cause of the fall could not be ascribed to the carrier. We see nothing to commend a doctrine of such breadth. The trial court did not err in dismissing this claim.

V.

Finally, the Tolans contend that the trial court improperly instructed the jury regarding damages for aggravation of a pre-existing condition. The trial court gave the following instruction:

> A person who has a condition or disability at the time of an injury cannot recover damages for that condition or disability. However, he is entitled to recover damages for an aggravation of such pre-existing condition or disability if the aggravation is the legal result of the injury.
>
> This is true even if the person's pre-existing condition or disability made him more susceptible to the possibility of ill effects than a normal healthy person would have been, and even if a normal healthy person probably would not have suffered any substantial injury. In other words, the law provides that a defendant takes a plaintiff as he finds him.
>
> It is necessary for the plaintiffs to prove, however, that it is more likely than not that James Tolan's pre-existing condition or disability has been aggravated by the defendant's conduct and the extent to which it has been aggravated.
>
> Where a pre-existing condition or disability has been aggravated, the damages which the plaintiffs may recover are limited to the additional damages caused by the aggravation.

Paragraphs 1, 2, and 4 of this instruction closely pattern the instruction expressly approved by this court in *LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 632 P.2d 539 (Alaska 1981). Paragraph 3, which explicitly places the burden of apportionment on plaintiff, was not included in *LaMoureaux.* However, in *LaMoureaux* we held that plaintiffs with pre-existing conditions should generally bear the burden of apportioning damages when part of the damages are due to a pre-existing innocent cause. *Id.* at 544–45.

Appellants argue *LaMoureaux* should be limited to cases where the pre-existing condition is symptomatic. Where, as here, the condition is asymptomatic, the plaintiff should not have the burden of segregating out damages. In such a case, the defendant should be held responsible for the entire loss.

We reject this contention. Whether the pre-existing condition is asymptomatic or symptomatic is not determinative of who bears the burden of proof in apportioning damages. Rather, in *LaMoureaux* this court held that the burden should be borne by the plaintiff as long as the plaintiff's injuries can in fact be roughly apportioned between the pre-existing condition and defendant's negligence. Only when there is insufficient evidence to allow for an apportionment should the jury be instructed that the defendant is required to pay the entire damages. *LaMoureaux,* 632 P.2d at 545.[4]

Evidence was introduced that the jury could have used to determine the extent of aggravation. Tolan testified that he had "no pain whatsoever" prior to the accident. Immediately after the accident, he testified his back began to hurt. Doctors also testified as to Tolan's prior medical condition and post-accident symptoms. This same type of evidence was found to make an instruction regarding impossibility of apportionment unnecessary in *LaMoureaux. Id.* at 545.

We believe, however, that the third paragraph of the tendered instruction is unnecessary and in such cases may be unduly detrimental to a plaintiff's cause. As we noted in *LaMoureaux,* the plaintiff should not be required to prove "with great exactitude the amount of aggravation." *Id.* at 544. A statement to the jury as to the plaintiff's burden, without qualification as to the relaxed requirement of proof on this issue, may be inappropriate. In the instant case, however, any error in this regard was harmless. The jury was presented with evidence that all of Tolan's damages should be attributed to the slip and fall injury; plaintiffs were not attempting any rough approximation of damages.

For the reasons stated in part II of this opinion the judgment is REVERSED.

4. *See also* W. Prosser, Law of Torts § 52 (4th ed. 1972); J. Stein, Damages and Recovery § 108, at 187 (1972).

BURKE, Justice, joined by MOORE, Justice, dissenting in part.

I dissent from that part of the court's opinion holding that the trial court erred in permitting Providence Washington to be joined as an involuntary plaintiff, and in permitting the jury to learn of Tolan's agreement with Providence Washington. Otherwise, I concur.

I

Strict adherence to the evidentiary aspect of the collateral source rule was abandoned in *Truckweld Equipment Co. v. Swenson Trucking & Excavating,* 649 P.2d 234 (Alaska 1982). In *Truckweld* we held that an insurance company holding a subrogated interest is subject to compulsory joinder, as a real party in interest, under Alaska Civil Rule 17(b). Once the insurance company is joined, the jury must be told, at least in general terms, why the insurance company is a party. The critical issue, then, is whether Providence Washington was properly joined as an involuntary plaintiff.

Even though Providence Washington's interest was based on its payment of workers' compensation benefits, I would hold the joinder in this case proper, because Tolan entered into a contractual arrangement with Providence Washington, which altered the statutory distribution of any proceeds of his third party action. Under these circumstances, joinder of the partial subrogee was appropriate under *Truckweld* and, in my judgment, not prohibited by our holding in *Exxon Corp. v. Alvey,* 690 P.2d 733 (Alaska 1984).

II

I disagree also with the court's holding that the trial court erred in admitting into evidence the agreement between Providence Washington and Tolan.[1] The opera-

1. Although other evidence of workers' compensation was admitted at trial, much of this was not objected to at the time of its admission, nor in appellants' statement of points on appeal or in their briefs. Accordingly, any objection to

tive provisions of this agreement, which was recorded in a letter sent by Providence Washington's attorney to Tolan's attorney, are:

1. [It is agreed by both Providence Washington and Mr. Tolan that you and I will share 40% of any recovery, whether those fees come from the carriers or Mr. Tolan's portion.]

2. It is agreed that Providence Washington will advance all costs of the litigation. These costs will be returned to them off the top of any recovery.

3. It is agreed that any expenses incurred by Mr. Tolan as a result of this litigation will be reimbursed by the carrier as a cost of the litigation.

4. The carrier will receive 40% of any recovery until it has received 60% [100% minus our 40%] of their Workmen's Compensation lien.

5. It is agreed that Mr. Tolan will receive 20% of any recovery from the first dollar.

6. Once Providence Washington has received all of its entitlement under this formula, Mr. Tolan will receive the balance, subject to our attorney fees.[2]

The agreement was not introduced in order to mitigate ERA's liability for damages. Instead, ERA sought to introduce the agreement during cross-examination of Tolan in order to impeach his credibility. ERA had already introduced considerable evidence which indicated that prior to signing this agreement on April 21, 1980, Tolan had never indicated to anyone that the helicopter carrier was at fault for the accident. He filed suit only after being urged to do so by Glenn Smith, a representative of Providence Washington. After April 21, the litigation was commenced, and in later depositions Tolan repeatedly blamed the helicopter company and pilot for his injuries. ERA alleged the litigation agreement accounted for Tolan's change of attitude.

My colleagues reject ERA's argument, because "on direct examination, Tolan testified that nobody had ever asked him who he thought was at fault for the accident." From this, they apparently conclude that the agreement provided no reason to suspect Tolan's trial testimony concerning the cause of the accident. I disagree. Whether or not Tolan was specifically asked who was at fault, there were numerous instances where it would have been reasonable to expect him to assign some blame to ERA, if he believed there was any reason to do so. His persistent failure to make any such claim, until the agreement was signed, could reflect on his credibility at trial in the eyes of reasonable jurors.[3]

Under the agreement, Tolan received a risk-free opportunity for recovery against ERA, with a guaranteed portion of any recovery. Absent the agreement, Tolan would have had to bear the risk of loss himself, and would not have received any recovery until Providence Washington had received the amounts it had paid. AS 23.30.015(b). ERA contended that informing the jury of Tolan's heightened financial

admission of other evidence regarding workers' compensation was waived. Alaska R.Evid. 103; Alaska R.App.P. 210(e).

2. The attorney's fee arrangement appearing in brackets in paragraphs 1 and 4, was not referred to before the jury and was deleted when the exhibit went to the jury.

3. On the evening of the alleged accident Tolan went to the camp medic complaining of a back strain. Tolan reported that he had slipped off a pontoon while climbing out of a helicopter. On the accident injury report he completed that evening, Tolan specifically indicated that the accident was *not* the result of an unsafe condition or an unsafe act.

Shortly thereafter, Tolan discussed the accident with his supervisor, Andrew Potts. On October 6, 1978, Potts completed an employer's notice of injury form, based on information provided by Tolan. Potts indicated on the form that the accident was not caused by anyone other than Tolan, and that the accident was not caused by the failure of a machine or product.

On October 24, 1978, Tolan was interviewed by Carrie Davis, a claims representative for Providence Washington Insurance Company, the workers' compensation insurer for Tolan's employer. Based on Tolan's description of the accident, Ms. Davis concluded that there was "no third party involved" for subrogation purposes. Ms. Davis' supervisor, Ernie Dean, reviewed and concurred with Davis' determination that there was no third party liability.

interest in a claim against ERA as a result of the agreement would help the jury to determine the degree of credibility to attach to Tolan's statements made after the agreement was entered into. In the context of this case, I agree with ERA's contention and the trial court's finding that the litigation agreement was relevant on the issue of Tolan's credibility. In my judgment, the post-accident agreement, that altered the statutory compensation scheme between the injured worker and the insurance company, had considerable probative value on this issue.[4]

It is also evident that before allowing reference to the agreement, the trial court carefully weighed the probative value of such evidence against the agreement's potential prejudice to Tolan's case. All references to attorney's fees contained in the agreement were stricken, and the trial court gave limiting instructions aimed at minimizing the prejudicial impact of the evidence on the jury's determination of damages.[5] Under the circumstances of this case, I believe that the trial court did not abuse its discretion.

I would affirm the judgment of the superior court.

Justice MOORE has authorized me to state that he joins in my dissent.

4. *See generally,* 2 J. Wigmore, Evidence §§ 278, 282a (3d ed. 1940). *See also Commercial Credit Plan, Inc. v. Beebe,* 123 Vt. 317, 187 A.2d 502 (1963) (trial court erred in refusing to allow plaintiff to inquire whether defendant's witnesses had agreed to share legal expenses of defendants).

5. *See Gildersleeve Logging v. Northern Timber Corp.,* 670 P.2d 372, 382 (Alaska 1983) (limiting instructions cured whatever prejudice may have been caused by admission of insurance).