Into LIIMATTA, Appellant/Cross–Appellee,

v.

Deborah VEST, Appellee/Cross–Appellant.

Nos. S–9289, S–9320.

Supreme Court of Alaska.

April 12, 2002.

⚷39(2.6)

Sheldon E. Winters, Lessmeier & Winters, Juneau, for Appellant/Cross–Appellee.

Michaela Kelley Canterbury, Kelley & Kelley, Anchorage, for Appellee/Cross–Appellant.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

We consider here various evidentiary rulings in a case arising out of a collision between a personal injury plaintiff's bicycle and the defendant's truck. Because it was an abuse of discretion to exclude evidence of the plaintiff's pre-accident drug-seeking behavior, and because the error was prejudicial, we reverse the judgment against the defendant and remand for a new trial.

## II. FACTS AND PROCEEDINGS

On July 2, 1997 a truck driven by Into Liimatta collided with a bicycle ridden by Deborah Vest. Vest suffered a broken right clavicle, trauma to her teeth and face, an avulsion fracture of her left wrist, and bruises and abrasions on the right side of her body. Vest sued Liimatta, seeking damages for past and future medical expenses, lost earnings, severe impairment, disfigurement, and noneconomic losses including pain and suffering, emotional distress, loss of enjoyment of life, fear, embarrassment, humiliation, and inconvenience. The jury returned a verdict awarding Vest damages of $97,287.26. On April 12, 1999 the superior court entered a final judgment of $119,219.91 against Liimatta. Liimatta appeals and Vest cross-appeals.

## III. DISCUSSION

### A. Standard of Review

■ We review a trial court's "decision to admit or exclude evidence for abuse of discretion." [1] We find an abuse of discretion only when "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." [2]

■ We review the superior court's set-off decision " 'de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' " [3] The date when "prejudgment interest begins to accrue is a question of law which we review using our independent judgment." [4]

### B. It Was an Abuse of Discretion to Exclude Evidence of Vest's Pre Accident Drug Seeking Condition.

Vest's medical history contains numerous references to drug-seeking behavior.[5] Vest moved in limine to exclude evidence of her drug-seeking behavior. The trial court ruled that evidence of Vest's post-accident drug-seeking behavior was admissible, stating:

I can see that there are all sorts of relevancy issues here.

It refutes the claim of pain and suffering. That means—what that means is she really wasn't in pain, she was just seeking drugs when she went to these doctors and got these medications. It refutes the extent of her injuries: that is, these injuries are just a minor matter compared to the—her real motive, and that was to go get these drugs. And it increases her—the medical expenses exponentially, not for legitimate treatment for actual injuries, but

because she's running around getting drugs from various doctors.

. . . .

. . . And I think there's sufficient relevancy here to . . . outweigh the prejudice that's caused by this kind of information coming in.

But the trial court nonetheless excluded evidence of Vest's pre-accident drug-seeking behavior, reasoning that it was "redundant, repetitious, and highly prejudicial." Thus, the trial court apparently applied Alaska Evidence Rule 403, which provides: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

### 1. The danger of unfair prejudice did not outweigh the probative value of the evidence of Vest's pre-accident drug-seeking behavior.

■ When reviewing the exclusion of evidence under Evidence Rule 403 as unfairly prejudicial, we first "consider the relevance of the [excluded evidence] and then determine whether its prejudicial effect so outweigh[s] its probative value that admission by the trial judge constitute[s] a 'clear abuse of discretion.' " [6]

Liimatta argues that evidence of Vest's pre-accident drug-seeking behavior was highly relevant to damages, credibility, and causation. We agree.

■ Evidence of Vest's pre-accident drug-seeking behavior was highly relevant to Vest's claim for the loss of enjoyment of life. In *Ocasio v. Amtrak,* the plaintiff sued Am-

---

**1.** *Bennett v. Weimar,* 975 P.2d 691, 694 (Alaska 1999) (citations omitted).

**2.** *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982) (citations omitted).

**3.** *Chenega Corp. v. Exxon Corp.,* 991 P.2d 769, 791 n. 88 (Alaska 1999) (quoting *Bauman v. Day,* 892 P.2d 817, 824 (Alaska 1995)).

**4.** *Johnson v. Olympic Liquidating Trust,* 953 P.2d 494, 497 (Alaska 1998) (citing *Tookalook Sales & Serv. v. McGahan,* 846 P.2d 127, 129 (Alaska 1993)).

**5.** "Drug-seeking behavior" is "a pattern of seeking narcotic pain medication or tranquilizers with . . . complaints of severe pain without an organic basis. . . ." MOSBY'S MEDICAL DICTIONARY 517 (5th ed.1997).

**6.** *Poulin v. Zartman,* 542 P.2d 251, 260 (Alaska 1975) (citations omitted), *disavowed on other grounds by State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982).

trak for injuries sustained when a train struck him while he was walking on elevated railroad tracks.[7] In addition to seeking damages for past and future medical expenses, the plaintiff sought to recover for the loss of enjoyment of life.[8] The defendant offered evidence at trial that the plaintiff had a ten-year history of drug abuse problems involving cocaine, heroin, and alcohol which had continued until the accident.[9] The trial court excluded the evidence, stating that its prejudicial effect outweighed its probative value with respect to the plaintiff's claim for loss of enjoyment of life.[10] On appeal, the Superior Court of New Jersey, Appellate Division, reversed, holding that "a jury assigned the responsibility of determining the value of a loss of enjoyment of life should have had the opportunity to consider evidence that [a plaintiff's] mental and physical functions, customary activities and capacity to enjoy the pleasures of life were already restricted by a long-term addiction to drugs."[11] Similarly, evidence of Vest's pre-accident drug-seeking behavior was highly relevant to her claim for the loss of enjoyment of life.

This evidence was also highly relevant to causation, because it would have helped the jury distinguish between medical expenses attributable to Liimatta's negligence and medical expenses attributable to Vest's drug-seeking behavior. For example, Liimatta correctly notes that

> Vest claimed fees for the second, third and fourth opinions she sought for a shoulder surgery referral, despite the fact that all four opinions recommended against surgery. In assessing whether these repeated consultations were caused by the accident or caused by her drug-seeking condition, the jury would have to consider the true extent of her drug-seeking condition as it existed then, and not just the relatively minimal evidence in the short time between the date of the accident and these visits. The same applies to any of her post-accident medical care requests; the extent of Vest's drug-seeking condition

was probative to the cause of each pain complaint and request for medication.

Evidence of Vest's pre-accident drug-seeking behavior was also relevant to her credibility. Vest testified at trial that she had not had a problem with addiction to pain medication before the accident. Thus, evidence of Vest's pre-accident drug-seeking behavior would have directly impeached her testimony. Vest's credibility was particularly relevant, because a critical trial issue was the legitimacy of Vest's post-accident subjective pain complaints; her credibility when testifying might have shed light on the credibility of her subjective complaints. Evidence of pre-accident drug-seeking behavior was also relevant to the credibility of Vest's expert witness. It would have tended to impeach Vest's expert, Dr. Bliss, who testified that Vest's subjective pain complaints were legitimate.

Liimatta also argues that the excluded evidence was relevant because, he asserts, Vest made an aggravation claim that encompassed drug-seeking behavior. Thus, according to Liimatta, Vest argued to the jury that it could award damages to Vest if it found that Liimatta's negligence had aggravated Vest's drug-seeking behavior. While we agree that such an aggravation claim would make evidence of Vest's pre-accident drug-seeking behavior relevant, it is not clear to what extent Vest made such a claim in this case. While Vest's brief does not deny that she made such a claim, our review of the record does not convince us that Vest squarely made this argument to the jury. We therefore do not rely on this argument as a basis for reversing. But an argument by Vest on remand that Liimatta's negligence aggravated her drug-seeking behavior would be an additional reason to admit the evidence.

Liimatta next argues that the danger of unfair prejudice did not outweigh the probative value of this evidence. We agree.

**7.** *Ocasio v. Amtrak,* 299 N.J.Super. 139, 690 A.2d 682, 684–85 (App.1997).

**8.** *Id.* at 685.

**9.** *Id.* at 690.

**10.** *Id.*

**11.** *Id.* at 692.

In *Hiller v. Kawasaki Motors Corp.*, we stated that undue prejudice "connotes not merely evidence that is harmful to the other party, but evidence that will result in a decision being reached by the trier of facts on an improper basis." [12] Evidence of prior drug use and addiction certainly presents a danger of unfair prejudice.[13] "[T]here are strong attitudes against drug use. The introduction of evidence of drug use could cause the jury to consider ... [that] the person who uses drugs is a bad person and could prejudice his or her case." [14] Despite undoubted resulting prejudice, however, the probative value of proffered evidence may compel its admission.[15] For example, in *CNA Insurance Co. v. Scheffey*, the Court of Appeals of Texas held that "[i]t is difficult to imagine that a trial court would not abuse its discretion if, upon balancing pursuant to Rule 403, it determined that the probative value of evidence ... which bears on the crux of the case, was outweighed by a danger of unfair prejudice." [16] As we noted above, evidence of Vest's pre-accident drug-seeking behavior was highly relevant to the central issues. It was therefore an abuse of discretion to exclude the evidence, despite its unsavory implications, as unfairly prejudicial.

## 2. Evidence of Vest's pre-accident drug-seeking behavior was not cumulative.

The superior court excluded this evidence partly because it was cumulative. Liimatta argues that it was an abuse of discretion to exclude the evidence for this reason. We agree.

In *Wasserman v. Bartholomew*, we held that two categories of evidence may properly be excluded as cumulative: (1) evidence supporting an uncontested or established fact, and (2) evidence repeating a point made by previous evidence.[17] We noted that "[e]vidence falling within [the] second category should be excluded with caution, for repetition of the same evidence on a disputed point by several witnesses is often persuasive in establishing the truth of that evidence." [18] We also noted that excluding evidence pertaining to the central issue at trial on the ground that it is cumulative "is rarely within the trial court's discretion." [19]

■ Because Vest testified that she had not had a problem with addiction to pain medication before the accident, it was not an uncontested or established fact that Vest had engaged in pre-accident drug-seeking behavior. Furthermore, although the trial court admitted some evidence of Vest's pre-accident drug-seeking condition—Dr. Totten was allowed to testify about "his concerns based on a history of [Vest's] drug-seeking behavior"—the excluded evidence did not repeat a point made by previous evidence, because any repetition of the evidence was itself relevant to the extent and severity of Vest's pre-accident drug-seeking condition.[20] Finally, because Vest's pre-accident drug-seeking condition was relevant to the central disputes in the case, it was an abuse of discretion to exclude the evidence as cumulative.

## 3. There was adequate foundation for the introduction of evidence of Vest's pre-accident drug-seeking behavior.

Vest argues that the evidence was inadmissible because Liimatta did not offer expert

---

**12.** *Hiller v. Kawasaki Motors Corp.*, 671 P.2d 369, 373 (Alaska 1983).

**13.** *See United States v. Ong*, 541 F.2d 331, 339–40 (2d Cir.1976) ("[T]here are few subjects more potentially inflammatory than narcotics and thus such evidence should usually be excluded in a non-narcotics trial. . . .").

**14.** *Ward v. Loomis Bros.*, 532 N.W.2d 807, 811 (Iowa App.1995).

**15.** *See* 2 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 403.04[2], at 403–46 (2d ed.2000).

**16.** *CNA Ins. Co. v. Scheffey*, 828 S.W.2d 785, 790 (Tex.App.1992).

**17.** *Wasserman v. Bartholomew*, 923 P.2d 806, 813 (Alaska 1996).

**18.** *Id.* at 813 n. 22.

**19.** *Id.* at 814.

**20.** *See United States v. Santagata*, 924 F.2d 391, 394 (1st Cir.1991) (noting that "the repetition of the evidence was itself distinctly probative") (citation omitted).

testimony to lay a proper foundation for its introduction. Vest cites *Sweet v. Sisters of Providence*, where we stated:

It is well established that trial courts have the right to ensure that proffered evidence meets certain legal thresholds before it may be used at trial. For instance, a court may inquire into whether certain evidence is relevant and material, and whether it merits exclusion under Alaska Evidence Rule 403. *It is also proper for the court to ensure that foundational requirements [are] satisfied.*[21]

■ Vest's argument is not well taken, because the medical testimony at trial established the necessary foundation for admitting the evidence. Dr. Totten testified:

Q: And there's one note that we would all want to ask you about, Doctor.

It says: Note she has a long past history of—and it goes on. It says: Medication-seeking behavior. And I want to ask you some questions about that, sir.

What do you mean by "medication-seeking behavior"?

A: The—this is a loosely-defined term that's applied in interpersonal communications between doctors. There's no diagnosis, quote, attached to this, but it's a—it's a means of communicating between physicians that a patient has—has a habit of—of attending with complaints which a [physician] is unable to substantiate objectively and the patient's request is for medications.

Furthermore, Dr. Paulson, an oral surgeon, agreed that patients with drug-seeking behavior will "sometimes go so far as to have their teeth extracted to enable that pain medicine behavior." Thus, there was adequate foundation in the record to support the admission of evidence of Vest's pre-accident drug-seeking behavior.

### 4. The error was prejudicial.

■ Vest argues that any error in excluding this evidence was harmless. She claims that Liimatta was permitted to make his argument to the jury that Vest's damages "were more a product of her 'drug seeking behavior' than of any actual injuries she received in the collision." Vest notes that Liimatta was allowed to present evidence of Vest's post-accident drug-seeking condition, and that Dr. Totten was allowed to testify about the history of his treatment of Vest, including his concerns about her drug-seeking behavior. Vest also claims that "[w]hat[ever] point there was to be made in the introduction of Mr. Liimatta's requested 'evidence' was made. Ms. Vest was not awarded the full measure of her requested past medical expenses, no damages for future loss of earning capacity and no damages for future physical impairment." (Emphasis deleted.)

Liimatta counters that because the excluded evidence was directly relevant to the central disputes in the case, it cannot be said with fair assurance that the jury would not have been swayed if the evidence had been introduced.

The potential opportunity to cross-examine Vest herself about some of the excluded records does not render the exclusion harmless. To the extent the records contain admissions Vest made to health professionals, her answers on cross-examination about the admissions could be effectively impeached only by showing the records to the jury, something that their exclusion apparently precluded. To the extent the records contained observations or opinions of health professionals, cross-examination of Vest would have been ineffective because she did not have the training to respond to such questions.

The dissent would affirm, partly because it concludes that Liimatta's failure to make an offer of proof deprived the trial court of an opportunity to rule on the probative value of particular documents.[22] But there is no legitimate dispute that at least some of the pre-accident medical records that were excluded contained evidence which was highly relevant, as we have noted above. We read the trial court's exclusionary rulings to encompass these records and to have rendered

---

**21.** *Sweet v. Sisters of Providence,* 895 P.2d 484, 496 (Alaska 1995) (emphasis added).

**22.** Dissent at 313, 314.

futile further attempts by Liimatta to admit them into evidence.

■ A judgment must be reversed under Alaska Civil Rule 61 if (1) evidence was erroneously excluded and (2) the exclusion prejudiced the offering party.[23] An erroneous exclusion of evidence is prejudicial to the offering party if we cannot "say with fair assurance, after stripping the erroneous action from the entire evidence, that the jury was not substantially swayed or affected by the error."[24] In making this determination, we "must necessarily put [ourselves], as nearly as possible, in the position of the jury in order to determine whether, as reasonable [people], the error committed probably affected their verdict."[25] Because, as noted above, the excluded evidence was highly relevant to the critical disputes in this case, we cannot say with fair assurance that its exclusion did not sway or affect the jury. We therefore reverse the judgment and remand for a new trial. Any embarrassing information in the medical records which is not particularly relevant on remand may be redacted.

Because we reverse and remand for a new trial, we need not address Liimatta's argument that the trial court erred by instructing the jury on aggravation of Vest's preexisting drug-seeking behavior after it excluded this evidence. Remanding for a new trial alleviates any prejudice stemming from an untimely assertion of the aggravation claim.

## C. It Was Not an Abuse of Discretion to Exclude Evidence of Vest's Receipt of Collateral Source Benefits.

Vest sought before trial to exclude evidence that she had received collateral source benefits—free medical and dental care at Southeast Alaska Regional Health Corporation, and eligibility for Medicare and Medicaid. The superior court excluded the evidence under the collateral source rule. Liimatta argues that it was an abuse of discretion to exclude the evidence for this reason without weighing its probative value against the dangers of unfair prejudice and confusion of the issues and the jury.

In *Tolan v. ERA Helicopters, Inc.*, we held that evidence of the receipt of collateral source benefits is admissible "if offered for a purpose other than the diminution of the plaintiff's damages. When such an offer is made the court should not automatically admit or reject the evidence. It must weigh its probative value against the dangers of unfair prejudice and confusion of the issues and the jury."[26]

Liimatta argued below that Vest's receipt of collateral source benefits was relevant to the issue of mitigation of damages. He claimed that Vest prolonged the period of her disability partly because she did not have to pay for medical and dental care. The trial court excluded evidence of Vest's collateral source benefits without explicitly weighing the probative value of the evidence against the dangers of unfair prejudice and confusion of the issues and the jury.[27]

Although the trial court excluded the evidence of Vest's receipt of collateral source benefits without explicitly balancing its probative value against the dangers of unfair prejudice and confusion of the issues and the jury, any error in failing to do so is harmless if balancing would have dictated exclusion of the evidence.[28]

■ Courts have recognized that evidence of a plaintiff's receipt of collateral source benefits is relevant to the issue of

---

**23.** *See Korean Air Lines Co. v. State*, 779 P.2d 333, 339 (Alaska 1989).

**24.** *Adkins v. Lester*, 530 P.2d 11, 18 (Alaska 1974).

**25.** *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 773 (Alaska 1982) (citation omitted).

**26.** *Tolan v. ERA Helicopters, Inc.*, 699 P.2d 1265, 1268 (Alaska 1985).

**27.** The trial court ruled, however, that Liimatta could offer evidence of Vest's receipt of free medical care for impeachment, after requesting a hearing, if Vest testified that she could not afford physical therapy.

**28.** *See, e.g., State v. Nielsen*, 316 Or. 611, 853 P.2d 256, 268 n. 13 (1993) (holding that exclusion of evidence on inappropriate ground is harmless error if it should have been excluded on different ground).

malingering.[29] Nevertheless, "it is usually acknowledged that the trial judge should exclude such evidence, or admit it only warily. Chief among [the] reasons is the possible prejudice to the plaintiff which attends informing the jury that [s/]he has already received some ... compensation for the injuries complained of."[30] Furthermore, "[i]nsofar as [such] evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of [collateral source benefits]."[31] Because a balancing of the probative value of the evidence against the dangers of unfair prejudice and confusion of the issues and the jury would have dictated exclusion, any error was harmless.

### D. It Was Not an Abuse of Discretion to Exclude Dr. Smith's Letter to the Social Security Disability Determination Unit.

Liimatta next argues that it was an abuse of discretion to exclude Dr. Kim Smith's letter to the Social Security Disability Determination Unit. Dr. Smith's letter concluded that "[t]here didn't seem to be a great amount of impairment in [Vest]." The superior court excluded the letter because Dr. Smith had not been called as a witness to testify about it. Liimatta contends that Dr. Smith's letter was an admissible business record under Alaska Evidence Rule 803(6). We disagree.

Under Alaska Rules of Evidence 801 and 802, a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, is hearsay and is inadmissible. But Rule 803(6) excepts from the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge acquired of a regularly conducted business activity, and if it was the regular practice of that business activity to make and keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Medical records kept by hospitals and doctors are often admitted under the business records exception.[32] However, the evidence Liimatta proffered was not a medical record, but a letter sent by Dr. Smith to the Social Security Disability Determination Unit. Because Liimatta did not establish that "it was the regular practice"[33] of Dr. Smith to prepare and send evaluation reports to the Social Security Disability Determination Unit, the letter was not a business record admissible under Rule 803(6). It was therefore not an abuse of discretion to exclude the letter.

### E. It Was an Abuse of Discretion to Exclude Evidence of Vest's Mental Disorders.

Vest moved in limine to exclude evidence of her preexisting mental disorders. Vest had been diagnosed with bipolar disorder and agoraphobia, and was incapable of working during eight years preceding the accident. The superior court granted Vest's motion, excluding evidence of Vest's mental disorders under Alaska Evidence Rule 403. Liimatta argues that it was an abuse of discretion to exclude this evidence because it was highly relevant to Vest's claim for future lost earnings. We agree.

---

**29.** See, e.g., Ridilla v. Kerns, 155 A.2d 517, 519 (D.C.1959). See also William H. Danne, Jr., Annotation, Admissibility of Evidence that Injured Plaintiff Received Benefits From a Collateral Source, On Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R.3D 234 (1973).

**30.** Danne, supra note 29, at 238 (citing e.g., Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963)).

**31.** Eichel, 375 U.S. at 255, 84 S.Ct. 316.

**32.** See 4 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 448, at 517 (2d ed.1994).

**33.** Alaska R. Evid. 803(6).

 Evidence of a plaintiff's preexisting mental disability is admissible when it is relevant to a claim for future loss of earning capacity.[34] Indeed, the jury instructions on Vest's future loss of earning capacity claim stated that the jury "may consider [Vest's] health, physical and *mental abilities;* her work habits and occupation before the accident. . . ." (Emphasis added). Evidence of Vest's preexisting mental disabilities was also highly relevant to her past lost earnings claim. Such evidence would have tended to establish the extent to which Vest's post-accident, pre-trial inability to work was caused by Liimatta's negligence rather than Vest's preexisting mental disabilities. It was therefore an abuse of discretion to exclude the evidence.

### F. It Was Not an Abuse of Discretion to Exclude the Medical Records Summary.

At trial, Liimatta sought admission of a summary of Vest's medical records and history under Alaska Evidence Rule 1006, which provides: "The contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The trial court excluded the summary. Liimatta argues that it was an abuse of discretion to exclude the summary.

34. *See, e.g., Ransom v. Adams Dairy Co.,* 684 S.W.2d 915, 917–18 (Mo.App.1985) (holding that evidence of plaintiff's history of mental breakdowns was admissible because it was relevant to plaintiff's earning capacity); *Ocasio v. Amtrak,* 299 N.J.Super. 139, 690 A.2d 682, 691 (App. 1997) ("[I]f a plaintiff seeks recovery for lost future earnings, the defendant may present evidence of his preexisting mental or emotional problems to show that his earning capacity was diminished before the accident.").

35. *See Emmel v. Coca–Cola Bottling Co.,* 904 F.Supp. 723, 742 (N.D.Ill.1995); *Smith v. State,* 125 N.H. 799, 486 A.2d 289, 293 (1984) ("A summary may be admitted . . . if its accuracy as a summary of admissible evidence can be established."). *Cf.* Alaska R. Evid. 1006 cmt. ("Should the accuracy [of a summary] be in dispute by the parties, the trial judge may order the original to be produced in court.").

36. Determining whether a summary accurately reflects the whole requires review of the summarized records. In Part III.B we held that it was

 A Rule 1006 summary is admissible only if it accurately reflects the summarized evidence.[35] The trial court found that the summary Liimatta sought to admit did not accurately reflect the medical records it purported to summarize, noting that "it dwelled very heavily on every negative thing that could be found." Because the medical records underlying the summary are not part of the record on appeal, we cannot independently determine the summary's accuracy and therefore have no basis for holding that it was error not to admit it into evidence.[36] Since Liimatta has not demonstrated that the summary was accurate, we affirm its exclusion.

### G. The Trial Court Properly Offset the Judgment by the Amount of Funds Advanced to Vest by Liimatta's Insurer.

Before trial, Liimatta's insurer advanced $10,214 to Vest under a written agreement that the payments would be credited to any judgment Vest obtained at trial or in settlement of her claim. The trial court accordingly offset the judgment by $10,214. In her cross-appeal, Vest claims that it was error to offset the judgment by the amount advanced to her.

Vest first contends that Liimatta is not entitled to an offset under AS 09.17.070,[37]

error not to admit any of the medical records. Although the parties' descriptions of the medical records combined with quotations from the medical records were sufficient to demonstrate that complete exclusion was error, similar evidence is not sufficient to demonstrate that a summary is accurate.

37. AS 09.17.070 provides:

*Collateral benefits.* (a) After the fact finder has rendered an award to a claimant, and after the court has awarded costs and attorney fees, a defendant may introduce evidence of amounts received or to be received by the claimant as *compensation for the same injury* from *collateral sources* that do not have a right of subrogation by law or contract.
(b) If the defendant elects to introduce evidence under (a) of this section, the claimant may introduce evidence of
(1) the amount that the actual attorney fees incurred by the claimant in obtaining the award exceed the amount of attorney fees awarded to the claimant by the court; and

because he cannot establish that the funds advanced were intended to compensate her for "the same injury" [38] for which the jury awarded damages. Vest argues that the advanced funds were intended to compensate her for "undisputed damages" which she did not claim at trial, rather than the "disputed damages" which she litigated and the jury awarded.

■ Vest's reliance on AS 09.17.070 is misguided. That statute applies by its terms only to funds a plaintiff receives from "collateral sources." [39] In *Chenega Corp. v. Exxon Corp.*, we defined a collateral source as " 'a source [that] is entirely independent of and collateral to a wrongdoer who is legally responsible for the injuries' " to a plaintiff, and concluded that a tortfeasor's insurer is *not* a collateral source.[40] The funds advanced by Liimatta's insurer were therefore not from a "collateral source," and AS 09.17.070 does not apply.

■ Furthermore, Vest's assertion that the advanced funds were intended to compensate her for "undisputed damages" which she did not claim at trial is inconsistent with the language of her written agreement with Liimatta's insurer. Each receipt Vest signed for funds advanced by Liimatta's insurer provides: "This amount is to be credited to any final settlement or to the amount payable under our policy for any judgment which you may obtain as a result of your accident on July 2, 1997." That the advanced funds were to be credited to any judgment Vest received necessarily implies that the parties intended the advanced funds to compensate Vest for litigated damages.

Vest next argues that the receipts she signed for funds advanced by Liimatta's in-

surer do not give rise to an enforceable contract. Vest argues that "there is no evidence beyond the receipts and the payments themselves that she ever agreed to the terms contained in the language on the receipts." She further claims that Liimatta's insurer "never 'offered' to advance her money . . . on the condition that she offset such advances against her eventual recovery" but rather "simply advanced the subject funds and informed her that such offset would occur." (Emphasis deleted.) Finally, Vest contends that because all of the language on the receipts was pre-printed, it is "not an expression of [her] agreement to the terms printed on the receipt, [but rather] a reflection of [Liimatta's insurer's] expectations."

■ Vest's arguments are unpersuasive. In *Beluga Mining Co. v. State, Department of Natural Resources*, we held that "the formation of a valid contract requires 'an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound.' " [41] Here, the receipts Vest signed encompassed all of the essential terms of the offer, and Vest's signature is evidence of an unequivocal acceptance and an intent to be bound by those terms. And, as the trial court accurately noted, both parties received a legally bargained—for benefit and detriment:

> State Farm was under no obligation to give Ms. Vest money before her claim was settled. It suffered a legal detriment by advancing her money before the close of her case—that is, it lost the use of that money and any interest that may have been earned on it. State Farm also received a benefit—Ms. Vest's promise to

---

(2) the amount that the claimant has paid or contributed to secure the right to an insurance benefit introduced by the defendant as evidence.

(c) If the total amount of collateral benefits introduced as evidence under (a) of this section exceeds the total amount that the claimant introduced as evidence under (b) of this section, the court shall deduct from the total award the amount by which the value of the nonsubrogated sum awarded under (a) of this section exceeds the amount of payments under (b) of this section.

(Emphasis added.)

**38.** AS 09.17.070(a).

**39.** *Id.*

**40.** *Chenega Corp. v. Exxon Corp.*, 991 P.2d 769, 790 (Alaska 1999) (citing *Alyeska Pipeline Serv. Co. v. H.C. Price Co.*, 694 P.2d 782, 787 (Alaska 1985)).

**41.** *See Beluga Mining Co. v. State, Dep't of Natural Res.*, 973 P.2d 570, 578 (Alaska 1999) (citing *Davis v. Dykman*, 938 P.2d 1002, 1006 (Alaska 1997)).

credit the payments she received against any recovery on her claim.

Ms. Vest, too, received a benefit. She got the use of this money before her claim was settled. She also suffered a detriment in that she promised to reduce her recovery by the amount of the money that she was advanced.

 Finally, Vest argues that her agreement with Liimatta's insurer is unenforceable under 3 Alaska Administrative Code (AAC) 26.060, which provides: "Any person transacting a business of insurance who participates in the investigation, adjustment, negotiation, or settlement of a claim: . . . (4) may not request a first-party claimant to agree to a compromise *or* enter into a release that extends beyond the subject matter that gives rise to the claim payment. . . ." (Emphasis added.) Vest asserts that the emphasized disjunctive "or" in 3 AAC 26.060(4) "permits a reading of the provision as forbidding [an] insurer from requesting that a *first-party claimant* agree to a compromise 'or' from entering into *any* 'release that extends beyond the subject matter that gives rise to the claim payment.' " We decline to adopt this interpretation. Chapter 26 of Title 3 of the Alaska Administrative Code consistently specifies which of its provisions apply to first-party complaints, third-party claimants, or both.[42] Because 3 AAC 26.060(4) does not specifically address third-party claimants, we

hold that the regulation does not apply to Vest, who is a third-party claimant. We therefore conclude that the superior court properly offset the judgment under the enforceable contract between Vest and Liimatta's insurer.[43]

## H. The Prejudgment Interest Award Must Be Recalculated.

Liimatta argued below that prejudgment interest should not be assessed on the funds advanced to Vest for the period after Vest received the funds. The trial court nevertheless awarded prejudgment interest on the entire amount of the jury's past damages award ($79,387.26) from July 3, 1997—when Vest was injured—without accounting for the $10,214 advanced to Vest. Liimatta contends that part of the prejudgment interest award conferred a windfall double recovery upon Vest. We address this issue in anticipation that it might arise again on remand.

 Because "money is worth less the later it is received[,] . . . prejudgment interest is [awarded] to compensate [a] plaintiff for the loss of the use of the money from the date of injury until the date of judgment."[44] Prejudgment interest may not be awarded to the extent it would give the plaintiff a double recovery.[45] "The party opposing a prejudgment interest award bears the burden to

**42.** *Compare* 3 AAC 26.060(1) ("Any person transacting a business of insurance who participates in the . . . settlement of a claim . . . shall fully disclose *to a first-party claimant* all relevant benefits and other provisions of coverage under which a claim may be covered.") (emphasis added) *with* 3 AAC 26.070(b) ("A person transacting a business of insurance who participates in the . . . settlement of *a third-party claim* may not make any statement that indicates that the rights of a third-party claimant may be impaired if a form, compromise, release, or similar document is not completed within a given period of time . . . .") (emphasis added) *and* 3 AAC 26.070(c) ("Any person transacting a business of insurance who participates in the . . . settlement of a claim may not continue negotiations for settlement of the claim directly with *any claimant* who is neither an attorney nor represented by an attorney . . . .") (emphasis added).

**43.** Vest's cross-appeal brief argued that the trial court erred in calculating attorney's fees under Alaska Civil Rule 82. But because Vest's reply

brief concedes that the trial court's calculation of Rule 82 attorney's fees was not erroneous, we do not consider whether any error might have been made.

**44.** *Am. Nat'l Watermattress Corp. v. Manville*, 642 P.2d 1330, 1343 (Alaska 1982). *See also Bevins v. Peoples Bank & Trust Co.*, 671 P.2d 875, 881 (Alaska 1983) ("The purpose of awarding prejudgment interest is not to penalize the losing party, but rather to compensate the successful claimant for losing the use of the money between the date he or she was entitled to it and the date of judgment."). We note that under AS 09.30.070(b), prejudgment interest now accrues in actions for personal injury, death, or damage to property "from the day process is served on the defendant or the day the defendant received written notification that an injury has occurred and that a claim may be brought against the defendant for that injury, whichever is earlier."

**45.** *See, e.g., Tookalook Sales & Serv. v. McGahan*, 846 P.2d 127, 129–30 n. 4 (Alaska 1993).

show that a double recovery would result; otherwise prejudgment interest is awarded as a matter of course." [46]

 The trial court awarded Vest prejudgment interest on the entire amount of the jury's past damages award partly because it found that it was not clear whether the advanced funds were intended to compensate Vest for past damages (for which a plaintiff is entitled to prejudgment interest) or future damages (for which a plaintiff is not usually entitled to prejudgment interest).[47] If the advanced funds were intended to compensate Vest for past damages, then part of the prejudgment interest award gave Vest a windfall double recovery, because Vest was no longer deprived of the use of the funds after she received them. To the extent that Liimatta establishes on remand that the advanced funds were intended to compensate Vest for past damages, the trial court should not award prejudgment interest on the funds for the period after Vest received them.

The trial court also noted that the parties' agreement provided for the advanced funds to be deducted from any subsequent "judgment," which by definition includes a prejudgment interest award.[48] The trial court therefore ruled that "the judgment should be calculated and then the advances deducted." But the judgment should not include a prejudgment interest award to the extent it would give the plaintiff a double recovery.[49] The parties' agreement is not inconsistent with limiting prejudgment interest to the periods when Vest was actually deprived of damages due her.

Finally, Vest claims that because the advanced funds were intended to compensate her for "undisputed damages" which she did not claim at trial, the prejudgment interest award does not give her a double recovery. But as we noted in Part III.G, Vest's assertion that the advanced funds were intended to compensate her for "undisputed damages" which she did not claim at trial is inconsistent with the language of her written agreement with Liimatta's insurer.

## IV. CONCLUSION

Because it was an abuse of discretion to exclude evidence of the plaintiff's pre-accident drug-seeking behavior, and because the error was harmful, we REVERSE the judgment against Liimatta and REMAND for a new trial. On remand, the trial court should offset any judgment Vest obtains by $10,214, the amount advanced by Liimatta's insurer. Moreover, to the extent that Liimatta establishes that the advanced funds were intended to compensate Vest for past damages, Vest should not recover prejudgment interest on the funds for the period after Vest received them.

CARPENETI, Justice, with whom BRYNER, Justice, joins, dissenting.

Faced with a defendant's pretrial demand that the court admit into evidence approximately 6,000 pages of medical records,[1] the superior court carefully reviewed the claims and defenses of the parties, admitted some but not all of the proffered evidence, and provided a means for the defendant to use the other parts of the evidence at trial. The defendant made no effort to use the evidence

---

**46.** *Cole v. Bartels*, 4 P.3d 956, 958–59 (Alaska 2000) (citing *Hancock v. Northcutt*, 808 P.2d 251, 261 (Alaska 1991)).

**47.** *See McConkey v. Hart*, 930 P.2d 402, 406–07 (Alaska 1996) (holding that future damage awards should accrue prejudgment interest only if they are discounted to a time before trial).

**48.** *See Falconer v. Adams*, 974 P.2d 406, 411–12 n. 5 (Alaska 1999) (citations omitted) ("[A]n award of prejudgment interest [is] part of the judgment proper.").

**49.** *See Am. Nat'l Watermattress*, 642 P.2d at 1343.

**1.** The transcript of the pretrial proceedings showed the judge's concern for what the defendant proposed:

> THE COURT: [Counsel], are you planning just to dump a ton of medical records on the jury?
> [COUNSEL]: I plan on admitting them.
> THE COURT: Well, yeah, that's the same thing, and that's not going to happen. I mean, you can use—you can admit them and have them used for impeachment or have them used by others in some specific reference, but just to hand them 6,000 pages of medical records, or even—if, hopefully, if my ruling has done anything, it's cut down those pages significantly.

at trial as the court allowed, but now complains that the court's limiting order was error. Because the trial court's ruling was well within the court's discretion, and because the defendant neither sought the admission of specific records nor showed how he was prejudiced by their exclusion, I would affirm the decision of the superior court.

Deborah Vest, who claimed she was injured in a bicycle/truck collision and sued for damages, moved for an extensive protective order before trial. The motion covered ten distinct injuries (or groups of injuries) going back over sixteen years, four different workers' compensation claims, three marriages, various mental disabilities, collateral sources, her relationship with her attorney, a prior DWI and loss of license, and alleged addiction to pain medication. Two parts of the motion are relevant to this appeal: prior injuries suffered by Vest and her use or abuse of pain medication. As to these issues, defendant Into Liimatta noted that several of the parts of her body that Vest claimed were injured in this accident were the subject of previous injuries; he further argued that Vest's addiction was admitted and highly relevant. Liimatta attached a fifty-three-page "medical summary/chronology" and at the hearing on the motion for protective order voiced his intention to have admitted into evidence both the summary and the approximately 6,000 pages of medical records from which the summary was drawn.

Superior Court Judge Larry C. Zervos ruled on this massive, multi-part motion in a lengthy oral ruling that, interspersed with continued colloquy with counsel, required several pages of transcript. Significant for our purposes are the following aspects of the ruling:

(a) on the question of other injuries, the judge ruled admissible evidence that showed that any "body parts" that Vest claimed were injured in the subject accident were injured in the past seven years;

(b) on the question of "drug-seeking behavior," the judge allowed all such evidence that had occurred since the accident, as well as testimony from three different doctors that dealt with pre-accident incidents: Dr. Totten's testimony about his concern about such behavior, and the testimony of Drs. Paulson and Jacobson (or Dr. West) concerning the claim that Vest, on a number of occasions in 1991, sought pain medication first for one tooth and then, after it was ultimately extracted, for a second tooth, for the purpose of obtaining the medication;

(c) the judge allowed the use of the medical records to impeach Vest and her witnesses ("Clearly, use them to impeach, it's fine."); and

(d) the judge disallowed the summary on the ground that it was one-sided.[2]

That the superior court specifically permitted use of any of the proffered evidence for impeachment is highly significant. Liimatta was thereby free to confront Vest with *any* instances—pre-accident or post-accident-of drug-seeking behavior once Vest testified that the pain she suffered and for which she needed medication resulted from the accident for which she was suing.[3] She did so testify. Yet Liimatta did not use the medical records for the purpose Judge Zervos specifically allowed: impeachment of Vest or her witnesses. Liimatta's failure made it impossible for the superior court to make the probative-vs.-prejudicial balancing that the rules require and that this court attempts in Part III.B.1. of today's opinion. This failure is particularly pointed because Liimatta, as the proponent of evidence, is required to seek admission of the evidence with a specific offer of proof.

As the proponent of the disputed evidence at trial, Liimatta was required to seek admission of the specific records that he wanted to use and to make a specific offer of proof in

---

2. I agree with this court's affirmance of Judge Zervos's decision to disallow use of the summary at trial.

3. *See Loncar v. Gray,* 28 P.3d 928, 932 (Alaska 2001) (holding that party benefitted by protective order may "open the door to evidence on a subject by putting that subject at issue in the case"); *Worthy v. State,* 999 P.2d 771, 775 (Alaska 2000).

the event of their exclusion.[4] Since the superior court's pretrial order broadly permitted Liimatta to use the disputed medical records in many different ways, the order did not relieve Liimatta of the obligation to comply with the offer of proof requirement.[5]

Liimatta failed to meet his obligation and, indeed, did not even attempt to use the disputed records for many of the purposes that the trial court deemed admissible. He simply presented a boxful of undifferentiated medical records to the court at the pretrial hearing, said that the box was full of relevant evidence, and demanded a pretrial ruling that all the records would be admitted because Vest did not dispute their authenticity.

Liimatta's failure to make specific offers of proof at trial makes it virtually impossible to meaningfully balance the probative value of any of the disputed records against their prejudicial impact or to realistically assess Liimatta's claim that exclusion of those records resulted in actual prejudice, as this court attempts to do in Part III.B.1. Liimatta's failure leads this court into the curious position of reversing the trial court's judgment without ever identifying a specific item of admissible evidence-not a single medical record-that the superior court's pretrial order actually excluded and whose exclusion caused actual prejudice to Liimatta.

Referring back to the appellant's briefs provides no useful guidance on this point.

While Liimatta describes a handful of specific records, all of them either raise facial problems of admissibility or fall well within the ambit of the trial court's ruling allowing Liimatta to admit specific records for specific purposes as they became relevant during the course of the trial. Liimatta makes no effort to explain his failure to use these records at trial, and his failure seems inexplicable, except perhaps as a deliberate tactical choice.

This court tries to deal with this vexing problem by essentially assuming the existence of prejudice from Vest's failure to establish its absence. Yet this approach reverses the usual rule that places the burden of proving both error and prejudice squarely on the appellant. Reversing the usual burden seems especially unjustified here, because the trial court expressly invited Liimatta to make unlimited use of the disputed records for purposes of impeachment. Because Alaska normally allows impeachment evidence to be considered for substantive purposes,[6] it would seem all the more fitting to demand that Liimatta explain why he could not have overcome any potential prejudice by accepting the court's invitation to use-and thereby gain admission of-the disputed records for impeachment.[7]

Judge Zervos was faced with a request to admit into evidence 6,000 pages of medical records (with no explanation or context) and a "summary" of them that was not a true

---

4. *See* Alaska R. Evid. 103(a)(2).

5. While our case law does indicate that Rule 103(a)(2) should be relaxed when an unambiguous pretrial order categorically excludes certain evidence and renders an offer of proof at trial patently futile, the trial court's pretrial comments here did not unambiguously and categorically exclude the disputed records; to the contrary, they broadly *allowed* many uses of the disputed records, were equivocal as to other uses, and generally displayed the court's openness to further consideration if Liimatta's counsel came up with further specific proposals. In such situations, our case law suggests that Rule 103 should be strictly enforced. *Compare, e.g., Landers v. Municipality of Anchorage,* 915 P.2d 614, 616–17 (Alaska 1996), and *Agostinho v. Fairbanks Clinic P'ship,* 821 P.2d 714, 717 (Alaska 1991), *with Bliss v. Bobich,* 971 P.2d 141, 144–45 (Alaska 1998), *Sweet v. Sisters of Providence in Washington,* 895 P.2d 484, 497 (Alaska 1995), and *Poulin v. Zartman,* 542 P.2d 251, 265–66 (Alaska 1975)

*overruled on other grounds by State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982).

6. *See, e.g., Beavers v. State,* 492 P.2d 88, 91–94 (Alaska 1971); *Wright v. State,* 501 P.2d 1360, 1369 (Alaska 1972); *McMaster v. State,* 512 P.2d 879, 884 (Alaska 1973); *Priest v. Lindig,* 583 P.2d 173, 180 & n. 26 (Alaska 1978); *Brower v. State,* 728 P.2d 645, 647 (Alaska App.1986); *Larson v. State,* 656 P.2d 571, 574–75 (Alaska App.1982); and *Thomae v. State,* 632 P.2d 236, 240 (Alaska App.1981).

7. The court concludes that the trial court's pretrail exclusion of some of the medical records "apparently precluded" showing the records to the jury while impeaching the plaintiff. (Op. at ——) But it did not: Judge Zervos specifically *allowed* the impeachment use of the evidence (if plaintiff testified, which she did), and evidence that is relevant to impeach is admissible for substantive purposes. *Beavers,* 492 P.2d at 91–94.

summary but a one-sided extraction of information negatively characterized by the defendant. The trial judge adopted a reasonable intermediate approach: He properly disallowed the "summary" as inaccurate, allowed in a substantial amount of the disputed evidence, and left the door open for virtually unlimited amounts of the remainder to be used should Liimatta choose to use it to impeach. Liimatta chose not to use the evidence to impeach. I would not now uphold his claim that the original ruling was flawed given his failure to use the evidence as the superior court allowed him to do, his failure to identify any evidence that he was precluded from using, and his inability to establish how the exclusion of any particular evidence prejudiced his case.