NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID ARBUCKLE, | ) | |
| | ) | Supreme Court No. S-16464 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-14-00054 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DITOMASO, INC. and | ) | AND JUDGMENT* |
| CLINTON A. LOGAN, | ) | |
| | ) | No. 1652 – October 25, 2017 |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Blaine D. Gilman, Gilman & Pevehouse, Kenai, for Appellant. Gregory R. Henrikson, Walker & Eakes, Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Bolger, and Carney, Justices. [Maassen, Justice, not participating.]

## I.     INTRODUCTION

A previously self-represented litigant challenges a jury's damages award for a motor vehicle accident. He argues the trial court erred by allowing the jury to hear evidence, comments, and arguments about his health insurance and prior workers' compensation claims without judicial limitation or curative instructions, despite his lack of objection and, in one instance, his express acquiescence. But the primary errors

---

\*     Entered under Alaska Appellate Rule 214.

alleged here are subject to review only for plain error, requiring in part a showing of a reasonable likelihood that the information presented to the jury had an appreciable effect on its verdict. And the jury's verdict — awarding no economic or non-economic damages for the litigant's personal injury claim and limiting its award to economic damages for the value of the litigant's vehicle — reflects that the jury found the litigant was not physically injured in the accident. Thus, given the specific facts of the case, there is no reasonable likelihood that the errors alleged ultimately had an appreciable effect on the jury's verdict; we therefore affirm the judgment.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

In January 2012 David Arbuckle was rear-ended by a refrigeration truck driven by Clinton Logan and owned by DiTomaso, Inc. (collectively DiTomaso). Arbuckle claimed he suffered back and neck injuries, resulting in headaches and eventually requiring an expensive cervical fusion surgery to alleviate the pain. The parties agreed that DiTomaso was at fault for the accident; the only question for trial was damages caused by the accident.

### B.     Proceedings

#### 1.     Pretrial

Arbuckle was self-represented for a four-day jury trial in July 2016. Much of the trial testimony was to be presented by previously videotaped depositions.

Before jury voir dire the parties discussed impermissible references to liability insurance.[1] The trial court told Arbuckle there could be "no mention of insurance. . . . [T]hat's just ironclad absolute." Arbuckle acknowledged the court's

---

[1]     *See* Alaska R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.").

directive and then noted there were "many references made to my work[ers'] comp[ensation in the videotaped depositions], which is an insurance in itself." In response DiTomaso's attorney explained the relevance of Arbuckle's prior workers' compensation claims and why discussing those claims would not violate the collateral source rule[2] in this case:

> [W]hile workers' comp[ensation] is not admissible if it's a collateral source and it relates to the same incident, this particular accident was not a workers' compensation [case]. . . .
>
> The workers' compensation that . . . Arbuckle is referring to is relevant because it relates to an earlier injury for which he was having the same identical complaints and a subsequent injury for which he was having the same identical complaints. So the collateral source rule does not apply in this case.

---

[2] The collateral source rule "exclud[es] evidence of other compensation on the theory that such evidence would affect the jury's judgment unfavorably to the plaintiff on the issues of liability and damages." *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 325 (Alaska 2012) (alteration in original) (quoting *Tolan v. ERA Helicopters, Inc.*, 699 P.2d 1265, 1267 (Alaska 1985)). This "rule is founded on concern that information about other sources of recovery can prejudice the jury on issues of liability or lead the jury to think that the plaintiff will get a double recovery." *Id.* at 327 (citing *Loncar v. Gray*, 28 P.3d 928, 933 (Alaska 2001)). Although "receipt of compensation benefits may be admissible if offered for a purpose other than the diminution of the plaintiff's damages," our "case law . . . suggests that collateral source evidence is presumptively prejudicial and should be excluded absent a showing that the evidence is more probative than other available evidence." *Id.* at 326 (quoting *Tolan*, 699 P.2d at 1268) (citing *Loncar*, 28 P.3d at 932-33); *see also Liimatta v. Vest*, 45 P.3d 310, 317 (Alaska 2002) ("Although the trial court excluded the evidence of . . . collateral source benefits without explicitly balancing its probative value against the dangers of unfair prejudice . . . , any error in failing to do so is harmless if balancing would have dictated exclusion of the evidence." (citing *State v. Nielsen*, 853 P.2d 256, 268 n.13 (Or. 1993))).

Is it prejudicial? Slightly. But is it more probative than prejudicial? Absolutely. . . .

January 9th of 2012, which is 12 days before this accident, he's seen by the chiropractor for neck and upper back pain. January 16th, five days before this accident, he's seen for specifically neck and upper back pain. . . .

And now he's saying that those identical problems are from this car accident. It is incredibly – well, it's impossible for us not to bring that information in.

After hearing this explanation the trial court ruled that "evidence of prior and subsequent personal injuries . . . is relevant and admissible" and that although "there can be some prejudice, . . . the probative value outweighs the prejudice."[3] But the court also stated "there can be no reference . . . to any monetary consequence in favor of . . . Arbuckle from any work[ers'] comp[ensation] payments, lump sum, monthly payments, or otherwise. So there can't be any reference to the monetary side." The court later reiterated that "[i]njuries that were sustained prior to the accident in question and subsequent to the accident in question are admissible, but monetary references, if any, to work[ers'] comp[ensation] payments [are] not admissible."

After the trial court's ruling DiTomaso's attorney asked for guidance on what to do with the videotaped deposition of Arbuckle's ex-wife, who "may make reference to monetary amounts." The court indicated that "[t]here is . . . an alternative" to a strict prohibition: "If any monetary amount with regard to work[ers'] compensation is in any of the evidence that goes to the jury, we could consider what's called a curative instruction to indicate they shouldn't take that into account." Arbuckle indicated he was content with giving a curative instruction rather than having to redact portions of the

---

[3]     *See* Alaska R. Evid. 403 (requiring exclusion of evidence "if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury").

deposition, and DiTomaso's attorney noted that she would "try to get any reference [to monetary settlements] that may exist in [DeTomaso's] evidence . . . taken out." She also expressed her understanding "that since there will be a curative instruction anyway, it's not as large of a concern."

## 2. Trial

### a. References to workers' compensation

During opening statements DiTomaso's attorney mentioned Arbuckle's workers' compensation in connection with other injuries six times without referencing payments. The next day Arbuckle indicated he probably would not play his ex-wife's deposition because it is "riddled full of work[ers'] comp[ensation] information." The trial court explained that references to workers' compensation would be permissible, noting DiTomaso's opening statement as an example. The court explained to Arbuckle that "there is no restriction from you using a deposition that has references to work[ers'] compensation." But the court reiterated that "there is to be no reference to insurance, that's by either side," and that "[w]ork[ers'] compensation, whether view[ing] it as insurance or not, is not out of bounds to the extent that it relates to injuries that have some relation before or after the injuries from the accident in question."

Arbuckle discussed playing his ex-wife's deposition, but he ultimately did not. There nonetheless were repeated references, not simply to prior or subsequent injuries, but rather to Arbuckle's "workers' comp[ensation] injuries" throughout the videotaped testimony. Arbuckle did not object or ask that the videotaped testimony be edited to redact those descriptions, and the trial court took no action on its own.

DiTomaso's attorney later paused her expert medical examiner's videotaped testimony to note outside the jury's presence that the doctor was about to discuss a workers' compensation settlement. The trial court asked for Arbuckle's position on the issue; he responded, "I don't think it's a huge deal just to go through and play it." The

doctor testified that he understood "[Arbuckle] was offered a formal settlement rather than completing the rehab program [for a workers' compensation claim]. So I think [Arbuckle's] option was he chose to take the settlement and to terminate his [re]training . . . ."

### b. References to health insurance

In addition to playing his own videotaped deposition, Arbuckle testified at trial "about the pain before and after the accident":

> It just kept getting worse and worse, and then, you know, to where I couldn't rest at night. And then I just had to deal with it until I was able to get the funds together to have my neck fused.
>
> And since I've had my neck fused, it's way better than it has been. I don't experience the headaches. The headaches I got after, you know, that period of time were, like, double intense. It felt like a sinus headache, and that was the reason I went to the sinus doctor to see if I had something wrong with my sinuses. And he was inconclusive.

DiTomaso's attorney then requested a meeting outside the jury's presence to discuss Arbuckle's statement that he had "to get the funds together to have [his] neck fused." At sidebar DiTomaso's attorney noted that "insurance is a sensitive issue, but [Arbuckle] said, '[he] had to get the money together to get the cervical fusion,' [and it would] leav[e] the jury with the impression that [Arbuckle] paid for it"; Arbuckle's health insurance covered about 99% of the procedure's $82,917 cost; Arbuckle paid $735.91, about .89% of the total. The trial court then told DiTomaso's attorney "to be precise in your questions on cross with regard to the distinction," and not "to be asking about the [private health] insurance."[4] On cross examination Arbuckle admitted that he

---

[4] The stated basis for the request to impeach Arbuckle with evidence that he
(continued...)

paid only $735.91 out-of-pocket for the specific cervical fusion bill shown to him, his deductible was $5,000, and the $80,000 "bill for the hospital . . . was paid by someone" else. Arbuckle did not object to any of the questions and the trial court did not interfere with any of the questions.

At closing argument DiTomaso denied that Arbuckle was injured in the accident but relied on his medical records to argue that if the jury believed he truly was injured, then the jury should award him no more than $1,257 in medical expenses. Discussing Arbuckle's credibility, DiTomaso's attorney recalled:

> Arbuckle was on the stand and he said, "I didn't get the surgery for almost four years because I couldn't afford it." I mean, $80,000 or $90,000 of that figure he put up on the board is for surgery that he claims he just couldn't scratch two pennies together to afford, but then on cross-examination had to admit he had very nice health insurance that was

---

**4**    (...continued)
did not pay for his surgery seems to be directly in violation of the collateral source rule. *See supra* note 2. But Arbuckle did not object and the trial court does not appear to have engaged in any analysis of the issue. The record also does not reflect any balancing analysis required by Rule 403 in connection with using otherwise inadmissible evidence for impeachment. *See Agostinho v. Fairbanks Clinic P'ship*, 821 P.2d 714, 716 (Alaska 1991) ("[U]pon determining that the offered [otherwise inadmissible] evidence 'genuinely impeaches' the witness, the court *must* next determine whether the impeachment value outweighs the prejudicial implication . . . ." (emphasis added) (citing Alaska R. Evid. 403)). It also suggests the trial court may have felt violating the collateral source rule without the balancing analysis was permissible absent the words "health insurance." *Cf. Jones*, 282 P.3d at 326 ("[C]ollateral source evidence is presumptively prejudicial and should be excluded absent a showing that the evidence is more probative than other available evidence." (citing *Loncar*, 28 P.3d at 932-33)); *Liimatta*, 45 P.3d at 317 ("When . . . an offer [to admit a collateral source] is made the court should not automatically admit or reject the evidence. It must weigh its probative value against the dangers of unfair prejudice and confusion of the issues and the jury." (quoting *Tolan*, 699 P.2d at 1268)).

available from the date of the accident forward, and in fact I think he had said that that was his wife's.

He was still working at the time in a union position for the State of Alaska, but he can't afford what ended up being $731 for surgery. That does not make any sense and completely illustrates the irrationality of what's happening here.

Arbuckle did not object to DiTomaso's closing argument, the trial court did not intervene to strike the improper collateral source references to Arbuckle's health insurance, and no curative instruction regarding either the reference to health insurance or the reference to the workers' compensation settlement was requested or given to the jury.

DiTomaso conceded that economic loss for Arbuckle's vehicle should be valued at $2,294 based on "Kelley Blue Book" evidence.

### 3. Jury instructions relevant to Arbuckle's damages claims

Arbuckle's damages claims were expressly delineated by the final jury instructions. The instructions identified that his only allowable economic losses were past medical expenses arising from his claimed physical injury and damage to his vehicle. The instructions also identified his non-economic loss claim for pain and suffering, loss of enjoyment of life, physical impairment, and inconvenience resulting from his claimed physical injury.

### 4. Verdict

After deliberating the jury submitted a special verdict form awarding Arbuckle $2,300 in past economic damages, which was, rounded up, $6 more than what DiTomaso had conceded was the value of Arbuckle's vehicle that should be awarded to him. The jury awarded Arbuckle no past or future non-economic losses for his personal injury claim. After the jury verdict was read Arbuckle did not object on the ground that

the failure to award non-economic damages for pain and suffering was inconsistent with an award for personal injuries.[5]

Arbuckle, now represented by counsel, appeals.

## III.   STANDARD OF REVIEW

When a party does not object at trial we "look to see whether the trial court committed plain error."[6] "We will find plain error 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[7] But we will not reverse for plain error if the error is harmless.[8] Harmless error exists "when there is no reasonable likelihood that the [error] . . . had an appreciable effect on [the jury]."[9]

## IV.   DISCUSSION

Arbuckle argues that the trial court erred by allowing (1) references to his health insurance during cross examination and closing arguments in violation of the collateral source rule and (2) repeated references to his workers' compensation claims

---

**5**    *See Todeschi v. Sumitomo Metal Mining Pogo, LLC*, 394 P.3d 562, 573 (Alaska 2017) ("[W]e will not disturb a jury verdict if there is a theory which reconciles the apparent inconsistencies." (quoting *Yang v. Yoo*, 812 P.2d 210, 215 (Alaska 1991))).

**6**    *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011) (quoting *Raphael v. State*, 994 P.2d 1004, 1015 (Alaska 2000)).

**7**    *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)); *see also Adams*, 261 P.3d at 764 (describing plain error as "involv[ing] such egregious conduct as to 'undermine the fundamental fairness of the trial and contribute to a miscarriage of justice' " (alteration in original) (quoting *Raphael*, 994 P.2d at 1015)).

**8**    *See Adams*, 261 P.3d at 773 ("An error that is not constitutional in nature will be [harmless] if . . . there is [no] reasonable probability that it affected the outcome of the proceeding.").

**9**    *Jones*, 282 P.3d at 328 (quoting *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007)).

and a workers' compensation settlement from an unrelated incident despite the prejudicial effect. DiTomaso argues that the health insurance coverage issue must be analyzed for plain error because Arbuckle did not object and that Arbuckle's health insurance coverage was properly admitted after Arbuckle opened the door to this line of questioning. DiTomaso also argues that evidence of Arbuckle's medical injuries and complaints relating to his workers' compensation claims was both highly probative and properly admitted.

Arbuckle's first claim of error regarding violation of the collateral source rule appears to have considerable merit, but we do not need to make that inquiry as any error was harmless. DiTomaso conceded liability and told the jury that if it believed Arbuckle was physically injured in the accident — which it strenuously argued was not the case — it should award him $1,257 in medical expenses. DiTomaso also conceded $2,294 in damages for Arbuckle's vehicle. The jury instructions focused on economic loss only for the vehicle and medical expenses from the physical injury, as well as non-economic loss associated with the physical injury. Therefore if the jury believed Arbuckle was physically injured in the accident, DiTomaso conceded he should be awarded $3,551 in economic losses.

But the jury awarded only $2,300 in economic losses, which was, rounded up, $6 more than what DiTomaso conceded for the vehicle's value; the jury awarded nothing for non-economic loss for the claimed physical injury. The likely explanation for the jury's award therefore is that the jury believed Arbuckle was not physically injured in the accident, and believed that his surgery and medical visits were related to his pre-existing condition.

Evidence presented at trial supports this conclusion. Arbuckle did not complain of any pain immediately after the accident to a passenger in his car. DiTomaso's driver testified he had come to "almost a complete stop" when he hit

Arbuckle's car. An expert medical examiner testified that Arbuckle's back had degenerative changes unrelated to the accident and that any soft-tissue injury Arbuckle might have suffered in the accident should have resolved within three months. And — also relevant to Arbuckle's claim of error regarding evidence of his workers' compensation claims — the trial court did not abuse its discretion by ruling that evidence of Arbuckle's neck or back injuries prior to or subsequent to this accident was relevant and admissible at trial, as such evidence was permissible to show lack of causation of any injuries from this accident.[10] Because the jury likely did not believe Arbuckle was

---

[10] *See Jones*, 282 P.3d at 324 ("We review a trial court's decision to admit or exclude evidence for an abuse of discretion." (citing *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009))).

To the extent the trial court was appraised that some of this information would be in workers' compensation medical records, the trial court also did not abuse its discretion by ruling that evidence of workers' compensation claims would be admissible, but not evidence of workers' compensation settlements. And it was not an abuse of discretion to admit the very limited evidence of a partial workers' compensation settlement when it was admitted with Arbuckle's express consent.

This leaves one troubling aspect of DiTomaso's evidence. Admissible evidence of a prior or subsequent injury is one thing. But constant repeated references to that injury as a "workers' compensation injury" is another; it may become an attempt to characterize the plaintiff as much as the injury. Although Arbuckle raised some initial concerns about admission of the workers' compensation evidence and indicated he would want a curative instruction if his ex-wife's video deposition were played, he did not object to DiTomaso's repeated references to "workers' compensation injuries" or request a curative instruction based on those repeated references. Thus his current claims that he was prejudiced by the references to workers' compensation injuries or by the superior court's failure to give a curative instruction are reviewable only for plain error. But plain error review requires a high likelihood that injustice has resulted, and, because Arbuckle's workers' compensation claims related to other injuries and accidents, not the accident underlying this case, there is no such likelihood here.

physically injured in the accident, we conclude that any error from references to collateral sources was harmless.[11]

## V.    CONCLUSION

We AFFIRM the judgment.

---

[11]    *See Brandner*, 171 P.3d at 87 ("A trial court's error in admitting evidence 'is harmless when there is no reasonable likelihood that the admitted evidence had an appreciable effect on [the jury].' " (quoting *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 142 (Alaska 2004))).